938 So.2d 1047 (2006)
PELTS & SKINS, L.L.C.
v.
The LOUISIANA DEPARTMENT OF WILDLIFE AND Fisheries.
No. 2005 CA 0952.
Court of Appeal of Louisiana, First Circuit.
June 21, 2006.
*1049 Nancy Scott Degan, Daniel S. Terrell, Covington, Counsel for Plaintiff/Appellant Pelts & Skins, L.L.C.
Charles C. Foti, Jr., Attorney General, Terry Hessick, Karen Godwin, Asst. Attorney General, Baton Rouge, Counsel for Defendant/Appellee Louisiana Department of Wildlife and Fisheries.
Before: WHIPPLE, McCLENDON, and WELCH, JJ.
McCLENDON, J.
In this appeal, the plaintiff-appellant, Pelts & Skins, L.L.C. (the company), assigns error to the trial court's maintenance of a peremptory exception raising the objection of no cause of action in favor of the defendant-appellee, the Louisiana Department of Wildlife and Fisheries (the department). To determine whether the trial court erred in its grant of the department's exception, we must consider whether the company stated a cause of action for a constitutional challenge to two Louisiana statutes, LSA-R.S. 56:253 C(2)(a) and 56:256. After reviewing the petition and the statutes, we reverse and remand.

FACTS AND PROCEDURAL BACKGROUND
In this case, the company is a Louisiana alligator farming business with a principal place of business in St. Tammany Parish. On August 12, 2004, the company filed a petition for declaratory judgment, injunctive relief, and damages. In its petition, the company alleged that the department collected tag fees on alligators and alligator skins shipped out of state, pursuant to LSA-R.S. 56:253 C(2)(a), and, under LSA-R.S. 56:256, a severance tax on alligator skins shipped out of the state. Essentially, the company asserted that the two statutes in question violated both the Commerce *1050 Clause and Export-Import Clause of the United States Constitution, and that the department also violated various statutory requirements governing the use of the monies collected.
Finding that the statutes were constitutional, the court granted the department's exception of no cause of action and dismissed the company's constitutional claims. The trial court certified the judgment as final. The company appealed and assigned error to the trial court's grant of the exception and failure to find that the company had stated a cause of action challenging the statutes as unconstitutional.

PROCEDURE FOR PARTIAL JUDGMENTS
Initially, we note a procedural defect. Although the company's suit attacked the statutes as unconstitutional and also asserted that the department does not follow the statutory requirements, the department's exception of no cause of action was directed only at the constitutional challenges. Thus, the trial court's judgment, dismissing only some of the company's claims, did not end the litigation. Such a judgment is a partial judgment subject to the provisions of LSA-C.C.P. art. 1915 B.
For the purpose of an immediate appeal from a partial judgment, the trial court must find "no just reason for delay" and certify the judgment as a final judgment. LSA-C.C.P. art. 1915 B(1). When the trial court fails to state its reasons, we shall conduct a de novo review to determine whether a reasonable basis existed for the certification of finality, utilizing the non-exclusive factors outlined in Motorola, Inc. v. Associated Indemnity Corporation, XXXX-XXXX, pp. 16-17 (La.App. 1 Cir. 10/22/03), 867 So.2d 723, 732.
In this case, although the trial court certified the judgment as final, it did not express a basis for its action. Therefore, before we address the merits, we must first determine whether the trial court erred in designating the judgment as final.
Under the particular facts here, if we determine that the exception of no cause of action was improvidently granted, the issue of constitutionality would again be before the trial court. If the district court subsequently found one or both of the statutes unconstitutional, such a judgment would end the litigation or a substantial part of it. Thus, based on the relationship between the adjudicated constitutional challenges and the unadjudicated statutory claims, and the possibility that all the claims could be mooted by the future action of the district court on the constitutional questions, we find that the judgment was properly certified as a final judgment. See Motorola, XXXX-XXXX at pp. 16-17, 867 So.2d at 732.

CHALLENGED LOUISIANA STATUTES
At issue is LSA-R.S. 56:253 C(2)(a), which provides that:
Every resident fur dealer, alligator hunter, alligator farmer, taxidermist, nonresident fur dealer, or nonresident alligator hunter, before shipping alligators or raw alligator skins out of state, or before tanning or using for taxidermy of raw alligator skins within the state, shall pay to the department an alligator shipping label fee for each alligator so shipped and shall pay an alligator hide tag fee for each raw alligator skin to be so shipped, used for taxidermy, or tanned. The alligator shipping label fee and the alligator hide tag fee shall be collected by the department from the fur dealer, taxidermist, alligator hunter, alligator farmer, nonresident fur dealer, or nonresident alligator hunter who is shipping alligators or raw alligator skins, or *1051 who intends to tan, or use for taxidermy, the raw alligator skins. The department shall collect such fees at the time of shipment, using for taxidermy, or tanning, and no alligator shipping label or out-of-state shipping tag shall be issued by the department for a shipment before payment of the appropriate fee is received by the department.
The severance tax in question, LSA-R.S. 56:256, in part provides that:
There is levied a severance tax on all skins or hides taken from any furbearing animals or alligators, within the state, payable to the state through the department by the fur trapper, alligator hunter, or alligator farmer shipping or taking his own catch out of state, or by the dealer, shipping skins or hides out of state or tanning fur pelts or alligator skins in the state. . . .

BASIS FOR CONSTITUTIONAL CHALLENGES
The United States Congress received from the people the power "[t]o regulate Commerce with foreign Nations, and among the several States. . . ." U.S. Const. art. I, § 8, cl. 3. This power touches "all state taxation and regulation of interstate and foreign commerce. . . ." Department of Revenue, State of Washington v. Association of Washington Stevedoring Companies, 435 U.S. 734, 751, 98 S.Ct. 1388, 1400, 55 L.Ed.2d 682 (1978). If a statute on its face clearly discriminates against interstate or foreign commerce, the statute may be held per se invalid under the Commerce Clause. Crescent Towing & Salvage Co., Inc. v. Ormet Corporation, 97-1531, p. 5 (La.9/9/98), 720 So.2d 628, 631 (and cases cited therein); cert. denied, 525 U.S. 1142, 119 S.Ct. 1035, 143 L.Ed.2d 43 (1999). In more ambiguous cases, the constitutionality under the Commerce Clause of the statutes in question "depends upon the practical effect of the exaction." Department of Revenue, State of Washington, 435 U.S. at 750, 98 S.Ct. at 1399.
[I]nterstate commerce must bear its fair share of the state tax burden. The Court repeatedly has sustained taxes that are applied to activity with a substantial nexus with the State, that are fairly apportioned, that do not discriminate against interstate commerce, and that are fairly related to the services provided by the State.
Department of Revenue, State of Washington, 435 U.S. at 750, 98 S.Ct. at 1399. (emphasis added). This inquiry or analysis, which originated in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), may be fact intensive. Department of Revenue, State of Washington, 435 U.S. at 747, 98 S.Ct. at 1398. Under the Commerce Clause, which is more generally applied to commerce between states, if the "burden on interstate commerce outweigh[s] the State's interest," the tax will be invalidated. Department of Revenue, State of Washington, 435 U.S. at 747, 98 S.Ct. at 1398.
The United States Constitution, in Article I, § 10, cl. 2, provides that "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws. . . ." In Michelin Tire Corporation v. W.L. Wages, 423 U.S. 276, 279, 96 S.Ct. 535, 537-38, 46 L.Ed.2d 495 (1976), the Unites States Supreme Court moved away from an earlier review of foreign commerce based on whether the goods to be taxed could be defined as imports or exports. Instead, the Court focused on the nature of the tax under review and the policy underlying the prohibition contained in the Export-Import Clause.

*1052 First, the Federal Government must speak with one voice when regulating commercial relations with foreign governments. For example, tariffs which might affect foreign relations could not be implemented by the States consistently with that exclusive power. Second, import revenues were to be the major source of revenue for the Federal Government and should not be diverted to the States. Finally, harmony among the States might be disturbed unless seaboard States, with their crucial ports of entry, were prohibited from levying taxes on citizens of other States by taxing goods merely flowing through their ports to the other States not situated as favorably geographically.
Louisiana Land and Exploration Company v. Pilot Petroleum Corporation, 900 F.2d 816, 819 (5th Cir.), cert. denied, 498 U.S. 897, 111 S.Ct. 248, 112 L.Ed.2d 207 (1990).
However, a per se violation of the Export-Import Clause may be found if the goods themselves are taxed after they have entered the stream of exportation or importation. See United States v. International Business Machines Corporation, 517 U.S. 843, 861-62, 116 S.Ct. 1793, 1803-04, 135 L.Ed.2d 124 (1996); see also Louisiana Land and Exploration Company, 900 F.2d at 817 & 820-21; Virginia Indonesia Company v. Harris County Appraisal Dist., 910 S.W.2d 905, 915 (Tex. 1995), cert. denied, Harris County Appraisal Dist. v. Virginia Indonesia Co., 518 U.S. 1004, 116 S.Ct. 2523, 135 L.Ed.2d 1048 (1996).
The quintessential requirement underlying both Clauses and the applicable jurisprudence seems to be fairness. The "balance tips against the tax only when it unfairly burdens commerce by exacting more than a just share from the interstate activity." Department of Revenue, State of Washington, 435 U.S. at 748, 98 S.Ct. at 1398. For example, if a tax is levied on the goods themselves while in transit, the requisite connection between the state, the thing taxed, and services provided is broken. When the thing actually being taxed is the importation or exportation of the goods, the tax is prohibited. Conversely, if services helpful to a business are rendered by a state, and a proportionate reimbursement is sought from all the beneficiaries, the tax will usually pass constitutional muster. The same is true of the Michelin inquiry. Such a grounded, fair, and related tax would not equate to a protective tariff, or an impost or duty, arising only from the goods' or activity's place of origin. Such a levy would not deprive the United States of revenues to which it alone was entitled, but rather serve only as a recompense to the state for monies actually expended to benefit the taxpayer. See Michelin, 423 U.S. at 286-89, 96 S.Ct. at 541-42. Nor would other states be disturbed by a tax that, by definition, was not imposed on goods "merely flowing" through a taxing state with no other connections to the goods or activity. Louisiana Land and Exploration Company, 900 F.2d at 819.

NO CAUSE OF ACTION
The petition must set forth the material facts on which the cause of action is based. However, the conclusions of law are not conceded and are decided by the court after reference to the law in question. Lambert v. Riverboat Gaming Enforcement Division, 96-1856, p. 4 (La.App. 1 Cir. 12/29/97), 706 So.2d 172, 175, writ denied, 98-0297 (La.3/20/98), 715 So.2d 1221.
The peremptory exception raising the objection of no cause of action is a procedural device used to test the legal sufficiency of the petition. Unlike a motion for summary judgment, in making the determination on an exception of no cause *1053 of action, all well pleaded allegations of fact in the petition must be accepted as true, and no reference can be made to extraneous supportive or controverting evidence. The court must then determine whether the law affords any relief to the claimant if those factual allegations are proven at trial. If the allegations of the petition state a cause of action as to any part of the demand, the exception must be overruled. A petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. Home Distribution, Inc. v. Dollar Amusement, Inc., 98-1692, p. 5 (La. App. 1 Cir. 9/24/99), 754 So.2d 1057, 1060. The question therefore is whether, in the light most favorable to plaintiff, with every doubt resolved in his favor, the petition states any valid cause of action for relief under any evidence admissible under the pleadings. Home Distribution, Inc., 98-1692 at p. 5, 754 So.2d at 1060; see Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1018 (La.1993). A claim of vagueness or uncertainty directed at the factual allegations is subject to an exception raising the objection of vagueness, not the exception of no cause of action. Lyons v. Landry, 293 So.2d 674, 675 (La.App. 1 Cir.1974). The burden of demonstrating that no cause of action has been stated rests on the exceptor. In reviewing a trial court's sustaining an exception of no cause of action, the reviewing court conducts a de novo review. Home Distribution, Inc., 98-1692 at p. 5, 754 So.2d at 1060.

APPLICATION OF THE LEGAL PRECEPTS TO THE FACTS
In its petition, the company specifically alleges that the fees and severance tax discriminate against out-of-state shipping, and are thus unconstitutional under both the Commerce and Export-Import Clauses. Although the language of the statutes on first reading seems fair, the time and method of collection of the fee or severance tax create an anomaly. For example, LSA-R.S. 56:253 C(2)(a) requires a fee to be collected on all raw skins shipped out of state. However, the fee is not collected on raw skins kept in the state, unless the raw skin is to be tanned or used in taxidermy. The same disparate treatment occurs in the collection of the LSA-R.S. 56:256 severance tax. The severance tax is levied on "all skins" taken within the state, which appears to be an evenhanded application of a customary severance tax. The problem arises in the next phrase, which provides that the tax is to be collected on all skins shipped out of state, but collected in-state only when the skins are to be tanned. Although this alleged discriminatory dichotomy may prove to be a distinction without a difference in real world transactions, especially after evidence is adduced showing how raw skins are preserved for use, we again note that the case is before us only on an exception of no cause of action, and not on a motion for summary judgment or after trial.[1]
Under the Commerce Clause/Complete Auto analysis, the failure to tax all raw hides, if proven, could be found to be an unfair apportionment of the tax and a discriminatory burden on interstate commerce. Similarly, under the Michelin analysis, a discriminatory tax could be found to violate the Export-Import Clause by singling out exportation and discouraging *1054 it in a manner inconsistent with federal policy, which could also lead to diminished federal revenues. Thus, we find that the company sufficiently stated at least one basis for its cause of action asserting constitutional challenges.
As another basis for its claims, the company, in paragraph 14 of its petition, directly alleges that the fees and tax are unconstitutionally imposed on the "skins themselves while they are in transit"; a possible per se violation of the Export-Import Clause. See International Business Machines Corporation, 517 U.S. at 861-62, 116 S.Ct. at 1803-04; see also Louisiana Land and Exploration Company, 900 F.2d at 817 & 820-21; Virginia Indonesia Company, 910 S.W.2d at 915. However, we note that paragraph 12 alleges that the state collects the fees and tax when the skins intended for out of state shipping are "segregated from its inventory."
A review of the pertinent jurisprudence shows that an intention to ship is not enough to place the goods "in transit." Empresa Siderurgica, S.A. v. County of Merced, California, 337 U.S. 154, 157, 69 S.Ct. 995, 997, 93 L.Ed. 1276 (1949); see Department of Revenue, State of Washington, 435 U.S. at 755, 98 S.Ct. at 1402. To qualify as "in transit," the goods must have physically entered into "the stream of exportation." Kosydar v. National Cash Register Co., 417 U.S. 62, 71, 94 S.Ct. 2108, 2114, 40 L.Ed.2d 660 (1974).
While paragraphs 12 and 14 seem to be inconsistent, it may be that the paragraph 14 "in transit" claim is based on an alternate or different factual scenario than the one described in paragraph 12. In search of additional information that may clarify any ambiguity, we look to the statutes for guidance on when the legislature actually intended the tax to be levied or collected.
On this issue, both statutes provide for collection "at the time of shipment." See LSA-R.S. 56:253 C(2)(a); LSA-R.S. 56:257 B. However, we can find no statute in the applicable section of Louisiana law that explains whether "time of shipment" means at the time the goods are segregated and prepared for out of state shipment, or at the time they are physically shipped, that is, in transit.
Finding that the statutes provide no specific denial of the claims made in the petition that the tax is collected on goods in transit, and regardless of the actual timing process that may be proved by the evidence at a hearing or trial, the petition's factual allegation that the fees and tax are placed on the "alligator skins themselves while they are in transit," must be taken as a true alternate assertion when reviewing the exception of no cause of action. In addition, "[e]very reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial." Industrial Companies, Inc. v. Durbin, XXXX-XXXX, p. 7 (La.1/28/03), 837 So.2d 1207, 1213. Certainly, we cannot say that "it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle [it] to relief." Industrial Companies, Inc., XXXX-XXXX at p. 7, 837 So.2d at 1213. If the company does prove that fees and taxes are levied or collected on the skins themselves while "in transit," the exaction may initially qualify as a per se violation of the Import-Export Clause, whether or not the Michelin analysis applies. See International Business Machines Corporation, 517 U.S. at 861-62, 116 S.Ct. at 1803-04; see also Louisiana Land and Exploration Company, 900 F.2d at 817 & 820-21. Under the "stream of export" doctrine, or as a discriminatory burden on interstate commerce, a levy on any goods themselves *1055 while in transit could likely be found to have violated the Commerce Clause as well. See Virginia Indonesia Company, 910 S.W.2d at 908, n. 1.

CONCLUSION
For these reasons, we find at least two instances where, based solely on the factual allegations taken as true, analyzed under the wording of the statutes in question and applicable law, the company sufficiently stated a cause of action. Therefore, we find that the trial court erred in granting the exception of no cause of action and dismissing the company's constitutional challenges. We reverse and remand the case for further proceedings consistent with this opinion.[2] The costs of the appeal, $480.38, are assessed to the appellee, the Louisiana Department of Wildlife and Fisheries.
REVERSED AND REMANDED.
WELCH, J., concurs in result.
NOTES
[1] Although the department argues that taxing hides when tanned covers all alligator hides retained for use in Louisiana, we cannot make such an inference or finding on an exception of no cause of action.
[2] Nothing in this opinion is intended to be a finding on the actual merits of this case or a prediction of the likelihood that either party will prevail. The case before us is decided solely on the principles of review on an exception of no cause of action.