MICHAEL E. KIRBY, Judge.
| ¶ This matter is a consolidation of four separate appeals by 2330 Palmyra Street, L.L.C. (“2330 Palmyra Street”); PFD Two, L.L.C. (Wa Nora Two, L.L.C.) (“PFD Two”); 2226 Canal Street, L.L.C. (“2226 Canal Street”); and 2300 Canal Street, L.L.C. (“2300 Canal Street”). The appellants are four property owners[1] whose properties were expropriated by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (“Board of Supervisors” or “Board”) for the site of the future LSU-affiliated Academic Medical Center/ United States Veterans Administration[2] Hospi *1237 tal Complex (“LSUAMC/VA Hospital Complex”). In response to the Board of Supervisors’ petitions for expropriation, the property owners filed reconventional demands seeking additional compensation for damages allegedly sustained prior to the expropriation of their properties, as a result of a moratorium issued by the City of New Orleans in 2007, and renewed in 2008 and 2009, prohibiting the issuance of any building permits for construction, renovations, repairs or demolition of buildings in the area 1 ^encompassing the site of the future LSU/VA Hospital Complex. The Board of Supervisors responded to each reconventional demand by filing a declina-tory exception of lack of subject matter jurisdiction; dilatory exception of prematurity; and peremptory exceptions of prescription, nonjoinder of a party, and no cause of action. Following hearings in separate divisions in the district court, the trial court in Division G granted all the exceptions while the trial court in Division M granted only the exceptions of no cause of action. The property owners appealed. For the reasons that follow, we reverse the trial court judgments of December 29, 2010 and February 7, 2011, and reverse, in part, both judgments of January 25, 2010.[3]
FACTUAL BACKGROUND
The Board of Supervisors filed their petitions for expropriation in July and August of 2010. Prior to the expropriations, the properties were part of The PFD Group’s real estate investment portfolio, which included a number of residential and commercial properties located in the area designated to be the site of the future LSUAMC/VA Hospital Complex. The PFD Group had planned to renovate and lease the properties to serve as commercial and residential rental properties for persons and businesses returning to the City after Hurricane Katrina.
In 2007, the State of Louisiana, through the Board of Supervisors, commenced its efforts in furtherance of the expropriation by entering into a Cooperative Endeavor Agreement (“CEA”) with the City to acquire the property, |3and two formal Mem-oranda of Understanding (“MOU”), one between the State and the City, and one between the State and the VA. According to the expropriation petition, the purpose of the CEA and MOU was to enable the State to expropriate the properties by working in conjunction with the City and the VA.
On November 15, 2007, in furtherance of the MOU and the Board of Supervisors’ efforts to expropriate the property, the New Orleans City Council adopted Ordinance No. 22900, imposing a general moratorium on new building permits in the proposed area of the future LSUAMC/VA Hospital Complex. The City renewed the moratorium with ordinances in 2008 and 2009.
In their reconventional demands, the property owners allege that the Board of Supervisors aided by the MOU, CEA, and resulting moratoria, created and sustained an atmosphere in which the properties within the proposed LSUAMC/VA Hospital Complex site became severely devalued. They contend that from 2007 to the expropriation in 2010, their property values plummeted and investment opportunities ceased, because they were prevented *1238 from developing and/or improving their properties. As a result, the property owners allege the State benefitted by paying a depreciated real estate price for the expropriated properties. Specifically, the property owners argue that the 2007 moratorium constituted a “taking” in violating of Article I, § 4 of the Louisiana Constitution, and that the amount offered by the State for their properties fails to compensate them for the “full extent” of their losses as mandated by the constitution.
Louisiana Const. Article I, § 4 states, in pertinent part:
Section 4. (A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. |4This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
(B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit....
[[Image here]]
(5) In every expropriation or action to take property pursuant to the provisions of this Section, a party has the right to trial by jury to determine whether the compensation is just, and the owner shall be compensated to the full extent of his loss. Except as otherwise provided in this Constitution, the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation. [Emphasis added.]
In Coleman v. Chevron Pipe Line Co., 94-1773, p. 8 (La.App. 4 Cir. 4/24/96), 673 So.2d 291, 297, this Court noted that in every expropriation the property owner must be “compensated to full extent of his loss,” quoting La. Const.1974, Art. I, § 4, and stating: “[generally this means, that the owner should be ‘put in as good a position pecuniarily as he would have been had his property not been taken,’ ” quoting State Dept. of Highways v. Bitterwolf, 415 So.2d 196, 199 (La.1982).
The Board of Supervisors refers to the property owners’ reconventional demand as an inverse condemnation claim. This Court has commented on inverse condemnation in City of New Orleans v. Badine Land Ltd., 2007-1066, pp. 4-5 (La.App. 4 Cir. 5/21/08), 985 So.2d 832, 835-836, as follows:
The Louisiana Constitution, Article I, Section 4 provides for compensation to a landowner whose property rights are taken or damaged. When a landowner suffers a taking or damage in the absence of an expropriation proceeding he may seek compensation through an inverse condemnation action. Constance v. State Through Dept. of Transp. and Development, Office of Hwys., 626 So.2d 1151, 1156 (La.1993); and Reymond v. State Through Dept. of Highways, 255 La. 425, 447, 231 So.2d 375, 383 (La.1970). The Louisiana Supreme Court in State, Through Dept. of Transp. and Development v. Chambers Inv. Co., Inc., 595 So.2d 598 (La.1992), acknowledged that under the Constitution compensation is required even though the State has not initiated an expropriation proceeding and physically taken property from the owner. Id. at 602; also see Reymond, supra. The Chambers court went on to set forth a three-prong test to assist in establishing whether a constitutional taking has occurred. The factors for the court to decide are as follows: 1) whether a person’s legal right with respect to a thing or an object has been affected; 2) whether the property, either a right or a thing, has been taken or damaged, in a constitutional *1239 sense; and 3) whether the taking or damaging was for a public purpose. Id., 595 So.2d at 603.

Exception of No Cause of Action

All four property owners have appealed the trial courts’ granting of the Board of Supervisors’ exception of no cause of action.
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Fink v. Bryant, 2001-0987, p. 3 (La.11/29/01), 801 So.2d 346, 348-349. The burden of proof is on the exceptor. Raspanti v. Litchfield, 2005-1512, p. 6 (La.App. 4 Cir. 11/21/06), 946 So.2d 234, 238. The exception is tried on the face of the pleadings, and the court accepts the facts alleged in the petition as true, determining whether the law would afford relief to the plaintiff if those facts are proved at trial. Cleco Corp. v. Johnson, 2001-0175, p. 3 (La.9/18/01), 795 So.2d 302, 304. The question is whether, viewing the petition in the light most favorable to plaintiffs, and with every doubt resolved in their favor, the petition states any valid cause of action for relief. Rutledge v. Hibernia, 2000-0674, p. 2 (La.App. 4 Cir. 1/16/02), 808 So.2d 765, 766.
[(No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. In reviewing a trial court’s ruling on the exception, the appellate court should conduct a de novo review. Brookewood Investments Co., L.L.C. v. Sixty-Three Twenty-Four Chef Menteur Highway, L.L.C., 2007-0050, p. 2 (La.App. 4 Cir. 5/16/07), 958 So.2d 1200, 1201. A petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff (here, the plaintiffs in reconvention) can prove no set of facts in support of any claim which would entitle him (them) to relief. Fink, 2001-0987, p. 4, 801 So.2d at 349.
In asserting the exception of no cause of action, the Board of Supervisors argued that the claims that are the subject of the exception are separate and distinct from the property owners’ other claims because the date of the taking is the date of the expropriation petition was filed, and not as of the date of the moratorium, the “announcement” or the dates of the MOU and/or CEA, i.e., 2007.
In response, the property owners argue that the Board of Supervisors is effectively seeking a prohibited partial exception of no cause of action because the owners have not set forth two separate causes of action arising out of the operative facts of separate and distinct transactions or occurrences.
In Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993), the Louisiana Supreme Court recognized that there had been uncertainty in the area of partial judgments on exceptions of no cause of action, stating that it was taking the “opportunity to discuss partial judgments and to distinguish those cases involving separate and distinct causes of action properly cumulated in a single suit from those cases involving a single cause of action while 17asserting several types of relief or demanding several elements of damages.” 616 So.2d at 1237. The court elaborated and set forth the following rules:
If there are two or more items of damages or theories of recovery which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss one item of damages or theory of recovery. In such a case, there is *1240 truly only one cause of action, and a judgment partially maintaining the exception is generally inappropriate.
However, if two or more actions are cumulated which could have been brought separately because they were based on the operative facts of separate and distinct transactions or occurrences, a partial judgment may be rendered to dismiss one action on an exception of no cause of action, while leaving the other actions to be tried on the merits. In such a case, there are truly several causes of action, and a judgment partially maintaining the exception as to one separate and distinct cause of action is generally appropriate....
616 So.2d at 1239.
The property owners do not expressly assert separate causes of action in their reconventional demands. They set forth facts of the expropriation process, virtually from the inception of the idea for the project through expropriation. In them prayer for damages, they seek damages for the actual value of the property taken as of the proper valuation date — including the added value attributable to each property as part of the total real estate package owned by The PFD Group. They also seek inconvenience and delay damages; foregone business profits; and “future net income on properties whose redevelopment was halted due to the announced expropriation and/or the expropriation process.”
Delay damages are routinely sought by landowners in expropriation suits filed by the State and its agencies. See West Jefferson Levee Dist. v. Coast Quality Const. Corp., 93-1718 (La.5/23/94), 640 So.2d 1258 (award for delay damages reversed by Louisiana Supreme Court on the ground that the levee district | defendant’s four-year delay in taking action from the time it obtained a U.S. Corps of Engineers permit for construction of a levee until the time it actually filed the expropriation suits did not cause the landowners any damage, as during that time the landowners already were prohibited from developing their land by, inter alia, the existence of a cease and desist order issued by the Corps prohibiting such development); State, Dept. of Transp. and Dev. v. August Christina & Bros., Inc., 97-244 (La.App. 5 Cir. 2/11/98), 716 So.2d 372 (defendant landowner filed answer and reconventional demand seeking an increase in compensation, severance damages, and delay damages, although failure to award delay damages affirmed on appeal on the facts of the case); State, Dept. of Transp. and Dev. v. McMillion Dozer Service, Inc., 93-590 (La.App. 5 Cir. 5/31/94), 639 So.2d 766 (defendant landowner filed answer seeking additional compensation, including delay damages); State, Dept. of Transp. and Dev. v. Brookhollow of Alexandria, Inc., 578 So.2d 558 (La.App. 3 Cir.1991) (defendant landowner filed answer seeking additional compensation, including delay damages).
In the instant case, while the property owners seek separate delay damages, they also seek damages for the halting of the development of their property due to the announced expropriation and/or the expropriation process. However, those damages are very similar in nature to delay damages. Given that a demand for delay damages must be asserted by a landowner in any claim it makes for additional compensation in an expropriation action filed by the State or its agencies, the damages for the halting of the property owners’ redevelopment of their properties due to the “announced” expropriation and/or expropriation process would likewise have to be asserted at that time, or be subject to a plea of res \ judicata if raised in a later, sepai'ate action. See La. C.C.P. art. 425 and La. R.S. 13:4231.
*1241 In conclusion, there are not two separate causes of action arising out of the operative facts of separate and distinct transactions or occurrences in the instant cases. Rather, the instant cases involve two or more items of damage or theories of recovery which arise out of the operative facts of a single transaction or occurrence. Accordingly, the Board of Supervisors cannot seek a partial exception of no cause of action on these particular claims by the property owners.
Moreover, even assuming for the sake of argument that the exception of no cause of action as to the property owners’ pre-ex-propriation damage claims — to the extent they can be separated from their claims for inconvenience and delay damages— would be permissible under Everything on Wheels, supra, the property owners have adequately set forth factual allegations as to those claims. Viewing the reconven-tional demand petition in the light most favorable to the property owners, and with every doubt resolved in their favor, the petition states a valid cause of action for relief. Thus, we find the trial courts (Judge Giarrusso and Judge Irons) erred in concluding otherwise.

Exception of Lack of Subject Matter Jurisdiction

The property owners, 2330 Palmyra Street and PFD Two, argue that the trial court (Judge Giarrusso) erred in granting the Board of Supervisors’ declina-tory exception of lack of subject matter jurisdiction.
La. C.C.P. art. 2 defines jurisdiction over the subject matter as, “the legal power and authority of a court to hear and determine a particular class of actions or 1 ^proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted.”
In its exception, the Board of Supervisors argued that the trial court had no jurisdiction over the property owners’ re-conventional demands regarding the City Council-imposed moratorium that was in effect before the expropriation occurred, asserting that their claims are “only appropriately addressed by the administrative agency with exclusive subject matter jurisdiction over the moratorium, the Council of the City of New Orleans.”
Specifically, the Board of Supervisors emphasized that under the City of New Orleans Home Rule Charter legislative powers are vested in the City Council; that in furtherance of its police powers the City Council may, under the Home Rule Charter, impose a moratorium ordinance such as the ones at issue; and that § 3-126(3) of the Home Rule Charter provides that any moratorium ordinance or other temporary prohibition shall provide for a right of appeal to the City Council for waivers or exceptions thereto. Thus, the Board of Supervisors argued, the property owners had to first exhaust their administrative remedies before seeking judicial relief.
City Council Ordinance No. 22900 and the subsequent ordinances expressly provided that any party aggrieved by the ordinances could appeal to the City Council for a waiver of the provisions of the ordinances. However, the ordinances’ appeal provisions expressly stated that, ultimately, the City Council “may ... waive the provisions ... of this ordinance ... folloioing a determination by the Council that the issuance of the requested permit would not either thwart the purpose of this tempora'ry measure, which is to enable the development of the Veterans Administration Hospital and LSU Medical District, .... ” (Emphasis ours).
In U.S. v. Orr Water Ditch Co., 914 F.2d 1302, 1310 (9 Cir.1990), the federal appeals court noted that, although under *1242 the applicable Nevada law a party generally had to first exhaust its administrative remedies before seeking judicial relief, “one need not ‘initiate and participate in proceedings ... which are vain and futile.’ ” (Citation omitted).
In granting the exception of lack of subject matter jurisdiction, Judge Giarrusso found that 2330 Palmyra Street and PFD Two chose not to seek any permits or waivers despite the language in the ordinance that would have allowed them to do so.
Nonetheless, we find that considering the appeal provisions of Ordinance No. 22900 and the later ordinances, had the property owners sought a waiver and permit through the administrative process, either: (1) they would have been denied a permit on the ground that the issuance thereof would have thwarted the development of the LSUAMC/VA Hospital Complex; or (2) that, considering the well-publicized push for the project by the City and the Board of Supervisors, it would have been reasonable for the property owners to believe, at least as early as the 2007 enactment of the first moratorium, that any investment in their properties would have been for naught, given that the expropriation was inevitable.
The proposed LSUAMC/VA Hospital Complex, according to Ordinance No. 22900, was to be the anchor for a Regional Bioscience Development; was expected to create nine thousand jobs “vital to the recovery and diversification of the city of New Orleans economy;” and serve “the public purpose of providing healthcare to the citizens of New Orleans.” Under these circumstances, we find the property owners were not required to exhaust them administrative remedies by seeking a waiver of the moratorium, when the expropriation was inevitable and any such Inaction would have been vain and futile. Therefore, we find the trial court has jurisdiction over the subject matter of the property owners’ claims for any damages they allegedly sustained from 2007 to the expropriation in 2010, and the trial court erred in concluding otherwise.

Exception of Prescription

2330 Palmyra Street and PFD Two next argue that the trial court erred in granting the peremptory exception of prescription. The Board of Supervisors based its exception of prescription on prescriptive periods for the property owners’ taking of appeals from any administrative denial of a waiver relative to the City Council’s moratorium. However, that issue is moot in view of the above discussion on the exception of lack of subject matter jurisdiction.
Further, under La. R.S. 13:5111(A), “[ajctions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking.” La. R.S. 13:5111(A) covers actions for inverse condemnation. See SDS, Inc. v. State, Dept. of Transportation and Development, 2007-0406 (La.App. 4 Cir. 2/13/08), 978 So.2d 1013 (La. R.S. 13:5111(A) cited as basis for award of expert witness fees in an inverse condemnation action).
Assuming, for the sake of argument, that the property owners sustained damages beginning in November 2007, when the Council passed Ordinance No. 22900, the property owners would have had until November 2010 under La. R.S. 13:5111(A) within which to bring an inverse condemnation action against the Board of Supervisors.
| isThe property owners’ reconventional demands, to the extent they were based on claims of inverse condemnation, were filed *1243 in July, August and September 2010, less than three years after the Council passed the moratorium. Notably, the property owners do not limit their pre-expropriation damages to the effect of the City Council’s moratorium.
Also, the petition for expropriation states that it was being brought pursuant to La. R.S. 19:141, et seq. Under La. R.S. 19:150, an owner of property expropriated pursuant to La. R.S. 19:141, et seq., has thirty days from the service of the petition for expropriation in which to assert a claim for “additional compensation.” The record indicates that each property owner filed their reconventional demand less than thirty days after service of the Board’s petition for expropriation.
Thus, we find the trial court (Judge Giarrusso) erred in granting the Board of Supervisors’ peremptory exception of prescription.

Exception of Prematurity

In asserting the exception of prematurity, the Board of Supervisors argued that the property owners’ claims were premature, given that they had not exhausted their administrative remedies. As noted above, in light of these specific facts and circumstances, we find that the property owners were not required to exhaust their administrative remedies seeking a waiver of the City Council’s moratorium when the expropriation of their properties was clearly inevitable and any such action would have been vain and futile. Thus, we find the trial court (Judge Giarrusso) erred in granting the exception of prematurity.
1 uException of Nonjoinder of a Party under La. C.C.P. art. 641
2330 Palmyra Street and PFD Two next argue that the trial court erred in granting the Board of Supervisors’ peremptory exception of nonjoinder of a party under La. C.C.P. art. 641[4], for their failure to join the City as a defendant to their reconventional demands.
The Board of Supervisors, in asserting the peremptory exception of nonjoinder of a party, argued that without the joinder of the City as a defendant in 2330 Palmyra Street’s and PFD Two’s reconventional demands complete relief cannot be afforded the parties.
2330 Palmyra Street and PFD Two counter that their claims are not simply based on the City Council’s moratorium, but on the State’s “expropriation process, virtually from the inception of the idea of the project through the expropriation.” As property owners whose properties were “taken,” they seek recovery of the compensation guaranteed by the Louisiana Constitution from the State, not the City.
Under La. C.C. art. 2323, in any action for damages where a party suffers loss, the degree or percentage of fault of all persons causing or contributing to the loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of that person’s immunity by statute.
| ^Considering the above principles of comparative fault, we find that complete relief can be accorded the parties to the instant actions — with the Board of Super *1244 visors not being held liable for any fault attributable to any nonparty.
Thus, we find the trial court (Judge Giarrusso) erred in granting the exception of nonjoinder of a party under La. C.C.P. art. 641.
In summary, we conclude the trial court (Judge Giarrusso) erred rendering judgment against 2330 Palmyra Street and PFD Two and granting the Board of Supervisors’ declinatory exception of lack of subject matter jurisdiction; dilatory exception of prematurity; and peremptory exceptions of prescription, nonjoinder of a party, and no cause of action. We further conclude that the trial court (Judge Irons) erred in rendering judgment against 2226 Canal Street and 2300 Canal Street, insofar as the court granted the Board of Supervisors’ peremptory exception of no cause of action.
DECREE
Accordingly, for the reasons herein:
The December 29, 2010 judgment in the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College v. 2330 Palmyra Street, L.L.C., et al., Civil District Court for the Parish of Orleans, No. 2010-7983, Division G-11, is reversed and the Board of Supervisors’ exceptions are all denied;
The February 7, 2011 judgment in the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College v. PFD TWO, L.L.C. (f/k/a NORA TWO, L.L.C.), et al., Civil District Court for the Parish of Orleans, No. 2010-7985, Division G-11, is reversed and the Board of Supervisors’ exceptions are all denied;
The January 25, 2011 judgment in the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College v. 2226 Canal Street, L.L.C., et al., Civil District Court for the Parish of Orleans, No. 2010-7575, Division M-13, is reversed, in part, and the Board of Supervisors’ exception of no cause of action is denied;
The January 25, 2011 judgment in the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College v. 2300 Canal Street, L.L.C., et al., Civil District Court for the Parish of Orleans, No. 2010-7577, Division M-13, is reversed, in part, and the Board of Supervisors’ exception of no cause of action is denied; and,
Each of the above cases is remanded to the district court for further proceedings.
2011-CA-0443 REVERSED AND REMANDED.
2011-CA-0499 REVERSED AND REMANDED.
2011-CA-0565 REVERSED IN PART AND REMANDED.
2011-CA-0566 REVERSED IN PART AND REMANDED.

. According to the motion to consolidate the appeals, the appellants are all entities owned by the same parent company, The PFD Group, L.L.C. ("The PFD Group”), a New Orleans based real estate leasing and development company.

. The hospital is referred to as both the Veterans Affairs Hospital and Veterans Administration Hospital throughout the record.

. In the suits against 2330 Palmyra Street and PFD TWO, Honorable Robin M. Giarrus-so, Judge, Orleans Parish Civil District Court, Division G, rendered the judgments of December 29, 2010, and February 7, 2011, respectively, granting all the exceptions. In the suits against 2226 Canal Street and 2300 Canal Street, Honorable Paulette Irons, Judge, Orleans Parish Civil District Court, Division M, rendered the judgments of January 25, 2010, granting the exceptions of no cause of action only.

. La. C.C.P. art. 641 states:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.