ROSEMARY LEDET, Judge,
11 This is a petitory action. This case arises out of litigation in which Ronald Ferrari^ the plaintiff and the defendárit-ih-reconvention, sought to be declared the owner of two parcels of land — Lot 21-A ánd' Lot 22-B; , NOLA Renewal Group, LLC (“NOLA”), the defendant and "the plaintiff-in-reconvention, alleges that it' acquired ownership of both lots by acquisitive prescription pursuant to La. R.S. 9:563s.[1] From the trial court’s judgment finding NOLA acquired ownership of Lot 21-A, Mr. Ferrari appeals. From the trial court’s judgment finding NOLA did not acquire ownership of Lot 22-B and recognizing Mr. Ferrari’s ninety-nine percent undivided interest in Lot 22-B, NOLA appeals. For the reasons that follow, we affirm and remand.
FACTUAL AND PROCEDURAL BACKGROUND
On May 3, 2006, Mr, Ferrari purchased the property bearing municipal numbers 1835, 1837-39 Bienville Street in New Orleans, Louisiana from John |2Giuffrida. The act of cash sale described the property as two lots — Lot 21-A and Lot 22-B — both in the Second District and in Square number 219. According to two separate tax bills issued by the City of New Orleans (“the City”), Lot 21-A is commercial property that contains 'a building and bears municipal address 1839 Bienville Street; Lot 22-B is a vacant lot, classified as residential property, and assigned municipal address 1835 Bienville Street.
On January 28, 2010, the City, in a tax sale deed, conveyed a 1% interest in Lot *1248 22-B to Gilbert P. Bennett.[2]
On December 11, 2011, the City issued an.administrative judgment declaring the property located at “1839 Bienville Aye., District 2, Square 219, Lot 21” biighted. The judgment did not include Lot 22-B.
Seeking to acquire the blighted property pursuant to La. R.S. 9:5633, NOLA, on July 23, 2012, filed an affidavit of intent to possess.' The affidavit designated the property sought to be acquired as “1839 Bienville St. New Orleans, Louisiana 70112, District 2, Square 219, Lot 21.”[3] In accordance with the requirements of La. R.S. 9:5633, ÑOLA recorded the affidavit and sent notice by certified mail at Mr. Ferrari to the Bienville Street addresses and at an address in Silver Springs, Maryland, which was the address the Orleans Parish Assessor’s office had on file for Mr. Ferrari. The certified mail was returned unclaimed. |sNOLA also mailed notices to adjoining property owners and posted notice of its intent to possess on the building located at 1839 Bien-ville Street. NOLA received no response.
On September 25, 2012, NOLA filed an affidavit of possession in the conveyance records. The property description in NOLA’s affidavit of possession was identical to the property described in its affidavit of intent to possess — “1839 Bienville St. New Orleans, Louisiana 70112, District 2, Square 219, Lot 2T.”[4]- Attached to the affidavit was a mortgage certificate, which contained a description of the two lots— Lot 21-A and Lot 22-B — identical to the property description listed in the act of cash sale from Mr. Criuffrida to Mr. Ferrari. Notices were sent to Mr. Ferrari and the adjoining property owners, and a notice was posted on the building located at 1839 Bienville Street.
On February 7, 2013, NOLA obtained a building permit for 1839 Bienville Street. Thereafter, NOLA proceeded to rehabilitate the property, including the building on Lot 21-A and the vacant land on Lot 22-B, On April 15, 2013, the City issued a Certificate of Occupancy and Completion for 1839 Bienville Street.[5]
On May 9, 2013, Mr. Ferrari filed a petitory action and a request for injunctive relief. Mr. Ferrari contended that NOLA failed to comply with the requirements of La. R.S. 9:5633. Specifically, he asserted that the City’s | ¿administrative judgment of blight and NOLA’s two affidavits failed to correctly identify the property. Mr. Ferrari claimed that neither the City’s administrative judgment nor NOLA’s two affidavits included Lot 22-B; therefore, he contended that NOLA could not have acquired ownership of Lot 22-B.
On June 13,2013, NOLA filed an answer and a reconventional demand, asserting that it had complied with the requirement^ of La. R.S. 9:5633 and had acquired ownership of both parcels of land. Alternatively, NOLA sought reimbursement for costs, expenses, and enhanced value of the property.
On December 16, 2014, a bench trial was held on Mr. Ferrari’s petitory action. At *1249 trial, Mr. Ferrari testified that he lived, out of state. He stated that he purchased the property in 2006 and used the building, as storage. On cross-examination, Mr. Ferrari testified that since 2007 he has neither performed any work on the property nor paid the property taxes.
Larry Van Jackson, Jr., sole member and owner of NOLA, also testified, Mr. Jackson identified photographs of the property, which reflect that Lot 21-A and Lot 22-B are enclosed within the same chain-link fence. Further evidence was presented to demonstrate the extent of work that NOLA performed on the property, At the close of trial, the trial court took the matter under advisement.
On March 16, 2015, the trial court rendered judgment in . favor of NOLA. The trial court found that “on April 15, 2013,[6] [NOLA] acquired ownership of | ¡Immovable property with the municipal addresses of 1835 and 1837-39 Bienville St., located in the Second District, in Orleans Parish, Squire 219, Lots 2Í(A) and 22(B).”
On March 23, 2015, Mr. Ferrari filed a motion for new trial arguing that the judgment was cpntrary to .the law and evidence. He reasserted that Lot 22-B was not the subject of the City’s administrative judgment; thus, NOLA could not have acquired it. Mr. Ferrari also argued that NOLA failed to follow the requirements of La. R.S. 9:5633.
On June 18, 2015, the trial court granted the motion for new trial in part and denied the motion in part. The trial court reasoned as follows:
As to Í839 Bienville Street, Lot 21-A, the Motion for New Trial is denied and the court finds that defendant and plaintiff in reconvention, NOLA Renewal Group, LLC acquired ownership of this lot pursuant to LSA-RS 9:9633(1) [sic].
As to 1835 Bienville' Street, Lot 22-B, the Motion for New Trial is granted and the court finds that defendant and plaintiff in reconvention, NOLA Renewal Group, LLC did not acquire ownership of that lot pursuant to LSA-RSA [sic] 9:9633(I)[sic].
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that on the Petitory Action, there be judgment herein in favor of plaintiff and defendant-in-reconvention, Ronald A. Ferrari and against defendant and plaintiff in reconvention, NOLA Renewal Group, LLC finding that Mr, Ferrari has a ninety-nine percent [99%].ownership interest in 1835 Bienville Street, Lot 22-B.
In its reasons ‘for judgment, the trial court explained "that Lot 22-B was hot included in the City’s administrative judgment; and thus, it could not have been acquired by NOLA by acquisitive prescription under La. R.S. 9:5633.
This appeal followed.
^DISCUSSION
On appeal, the parties raise two issues. First, Mr. Ferrari contends that the trial court erred by denying his motion for hew trial as to Lot 21-A, finding that NOLA acquired ownership of Lot 21-A. Second, NOLA argues that the trial court erred by finding that NOLA did not acquire ownership of Lot 22-B and by failing to award reimbursement for its remediation of Lot 22-B. We address each issue separately.

Lot 21-A'

Mr. Ferrari contends that the trial court erred in finding that NOLA acquired *1250 ownership of Lot 21-A. Mr. Ferrari’s position is that the description of the property contained in the City’s administrative judgment was insufficient and that NOLA failed to comply with the law. Specifically, he contends that the City’s administrative judgment did not list either Lot 21-A or Lot 22-B. Mr. Ferrari further contends that NOLA Renewal Group failed to correctly identify the lot numbers in its affidavits. Mr. Ferrari still further contends that NOLA failed to timely pay the ad valorem taxes. Thus, Mr. Ferrari contends that the trial court erred in denying his motion for new trial as to Lot 21-A. We disagree.
La. R.S. 9:5633 provides, in pertinent part, as follows:
A. Ownership of an immovable may be acquired by the prescription of three years without the need of just title or possession in good faith. The requirements for the acquisitive prescription of three years are as follows:
(1) The land and all improvements thereon shall ... have been declared or certified blighted after an administrative hearing, pursuant to R.S. 13:2575 or [13:]2576.
|7(2) The following shall be filed in the conveyance records for the parish where the immovable property is situated:
(a) An affidavit by the possessor stating the name and address of the possessor, stating the intention of the possessor to take corporeal possession of the immovable property for the possessor’s own account in accordance with this Section, stating that such corporeal possession shall commence no sooner than sixty calendar days from the date of filing of the affidavit and giving a short legal description of the immovable property intended to be possessed; and
(b) There shall be annexed to and filed with the affidavit described in Sub-paragraph (A)(2)(a) of this Section a certified copy of the judgment declaring or certifying the property as blighted and the following certificate or proof:
* * *
(3) Within one week after the judgment, certificate or proof and affidavit are filed as described in Paragraph (A)(2) of this Section, said judgment, certificate or proof and affidavit shall be sent certified mail, return receipt requested, to the address of the owner shown on the tax rolls of the assessor, to the addresses of owners of immovable property having common boundaries with the immovable shown on the tax rolls of the assessor and to all parties having an interest in the immovable, as shown by the mortgage and conveyance records, at the address of each party as may be reasonably ascertained.
(4) Within one week after the judgment, certificate or proof and affidavit are filed as described in Paragraph (A)(2) of this Section, a notice shall be affixed in a prominent location on the immovable, stating the name and address of the possessor, stating that the possessor intends to take corporeal possession of the immovable for the possessor’s own account and stating the date that the notice is so affixed.
[[Image here]]
(6) Within ninety calendar days after the date on which the affidavit described in Subparagraph (A)(2)(a) of this Section is filed in the conveyance records as required by Paragraph (A)(2) of this Section, the possessor shall request from the recorder of mortgages a mortgage certificate, setting forth the full legal description of the immovable property, to be run in the name of the owner of the immovable property for a period of time commencing with the date of the *1251 acquisition of the .immovable property by the'Said owner and ending sixty days following the date of the filing of the affidavit described in Subparagraph (A)(2)(a) of this Section.
|s(7) The possessor shall take corporeal possession peaceably and no sooner than the date the mortgage certificate described in Paragraph (A)(6) of this Section is generated by the recorder, of mortgages and no later than sixty calendar days following the date of such generation.
(8) The following shall be filed in the conveyance records for the parish where the immovable property is situated within ten days after the possessor has taken corporeal possession of the immovable property:
(a) An affidavit by the possessor stating the name and address of the possessor, stating that the possessor has taken corporeal possession of the immovable for the possessor’s own account, stating the date that'the possessor took corporeal possession, stating the acts taken by the possessor to effect corporeal possession, and giving a short legal description of the immovable; and
(b) There shall be annexed to and filed with the affidavit described in Sub-paragraph (A)(8)(a) of this Section the mortgage certificate of the recorder of mortgages described in Paragraph (A)(6) of this Section, showing that sixty days have elapsed from the date of the filing of the affidavit described in-Sub-paragraph (A)(2)(a) of this Section and showing that no notice of lis pendens has been filed against the immovable property and that the immovable property has not been seized under a writ of fieri facias or seizure and sale.
(9) Within one week after the affidavit and certificate are filed as described in Paragraph (A)(8) of this Section, said affidavit and certificate shall be sent certified mail, return receipt requested, to the .address of the owner shown on the tax rolls of the assessor and to all parties having, an interest in the immovable, as shown by the mortgage and conveyance records, at the address of each party as may be reasonably ascertained.
(10) Within one week after the affidavit and certificate are filed as described in Paragraph (A)(8) of this Section, a notice shall be affixed in a prominent location on the immovable, stating the name and address of the possessor, stating that the possessor has taken corporeal possession of the immovable for the possessor’s own account, and stating the date that the possessor took corporeal possession. ■
(11) All ad valorem taxes, interest, and penalties due and payable shall be paid in full.
(12) If there are any improvements on ■the immovable, they shall be demolished or certificates of use and occupancy shall be 1 (¡obtained .within two hundred seventy calendar days after the date that corporeal possession was taken.
[[Image here]]
(I) Notwithstanding the provisions of Subsection A of this Section, in the event that the possessor rehabilitates or constructs a - residential or commercial structure in accordance with Paragraph (A)(12) of this Section, ownership of the immovable may be .acquired by prescription without the need of just title, or possession in good faith'on the date that a certificate of use and occupancy shall be obtained by the possessor. For the purposes of this Subsection, “residential or commercial structure” shall -not include ■ garages, sheds,'-barns, or other outbuildings.
*1252 The record indicates that Lot 21 at 1839 Bienville Street was declared blighted on December 11, 2011 by the City’s administrative judgment. Thereafter, NOLA filed an affidavit of intent to possess Lot 21 with municipal address 1839 Bienville Street. NOLA’s affidavit ;of - possession, along with a.copy of the judgment declaring property blighted, was sent to Mr. Ferrari’s address shown on the tax rolls of the assessor. Notice was, also affixed to the building on Lot 21-A.
On September" 26, 2012, NOLA filed an affidavit of possession seeking to acquire Lot 21 with- municipal address 1839 Bien-ville- Street. Attachéd to the affidavit was a mortgage certifícate. Notices were sent to Mr. Ferrari and the adjoining property owners. In addition, notice was posted on the building located at 1839 Bienville Street. The record also indicates that NOLA paid ad valorem taxes. La. R.S. 9:5633(A)(11) does not specify a time limit on paying all ad valorem taxes; thus, Mr. Ferrari’s argument as to the timeliness of the payment is unpersuasive. Furthermore, the City also issued a “Certificate of Occupancy and Completion” for 1839 Bien-ville Street on April 15, 2013."
| U)La. R.S. 9:5633(A) does not require that a possessor's affidavit, contain a full legal description. Rather, La. R.S. 9:5633(A)(2)(a) requires that the affidavit include, “a short legal description of the immovable .property -intended to be possessed.” Here, the record demonstrates tliat NOLA’s affidavits described the property as “1839, Bienville St. New Orleans, Louisiana. 70112, District 2, Square 219, Lot 21.” The record further demonstrates compliance -with La. R.S. 9:5633(A)(6); NOLA’s recorded affidavit of possession included-a mortgage certifícate, which contained a full legal description of the ¡property.
Accordingly, we find that NOLA satisfied the requirements set forth in La. 9:5633 and. acquired ownership of Lot 21-A by acquisitive prescription. Mr. Ferrari’s assignments of error thus lack merit.

Lot 22-B

NOLA contends that the trial court erred in- granting Mr. Ferrari’s motion for new trial and finding that NOLA did not acquire ownership of Lot 22-B. Specifically, NOLA contends that the trial court erred in reversing itself by finding that the property was not sufficiently identified.
In order for Ownership of immovable property to be acquired by acquisitive prescription under La. R.S. 9:5633, the property must first be “declared or certified blighted after an administrative hearing.” La. R.S. 9:5633(A)(1).
The property at issue,-although enclosed within the same fence, comprised of two lots bearing different municipal numbers— Lot 21-A bears municipal address 1839 Bienville Street; Lot 22-B bears municipal address 1835 Bienville | ,⅝ Street: On December 1, 2011, the City issued an administrative judgment declaring the property located at “1839 Bienville Ave, District 2, Square 219, Lot 21” to be blighted. The judgment does not include Lot 22-B. Neither NOLA’s affidavit of intent to possess, nor its affidavit of possession includes Lot 22-B. After the filing of each affidavit, NOLA sent notice to Mr. Ferarri stating that the: property to be acquired was “1839 Bienville Street ... Lot 21.”
This court in Mouledoux v. Skipper, 12-0212, p. 9 (La.App. 4 Cir. 11/7/12), 104 So.3d 585, 590, stated that La.R.S. 9:5633 “is complex and requires strict compliance.” Id. The City’s administrative judgment, NOLA’s affidavits, and the notices sent to Mr. Ferrari all fail to include Lot 22-B., Although-Mr. Ferrari acknowledged-that, his property, was.blighted, the record .is devoid of .any administrative *1253 judgment of blight as to Lot 22-B. Since La. R;S. 9:5633 requires a declaration or certification of blight of the property at issue, Mr. Ferrari’s acknowledgement is insufficient to award NOLA ownership of Lot 22-B by acquisitive prescription. The trial court was not manifestly erroneous in finding that NOLA could not have acquired Lot 22-B by acquisitive prescription pursuant to La. R.S. 9:5633. See Pollard v. Schiff, 13-1682, pp. 8-9 (La.App. 4 Cir. 2/4/15), 161 So.3d 48, 54.[7]
hiJn sum, we find that NOLA failed to satisfy the requirements set forth in La. 9:5633 as to Lot 22-B. Accordingly, NOLA’s assignment of error lacks merit.
NOLA also contends that the trial court erred in failing to award reimbursement for its remediation of Lot 22-B. Because the record does not permit us to resolve this issue, we remand to the trial court to determine the amount due NOLA pursuant to La. R.S. 9:5633(E) for its remediation of Lot 22-B.
DECREE
For the foregoing reasons, the trial court’s judgment is affirmed.. This matter is remanded to the trial court for it. to determine the amount due NOLA pursuant to' La. R.S. 9:5633(E) for its remediation of Lot 22-B.
AFFIRMED AND REMANDED
McKAY, C.J., dissents with reasons.
LOMBARD, J., dissents.

. La. R.S. 9:5633 provides a method of acquiring ownership of blighted property by acquisitive prescription. The trial court’s judg-merit erroneously refers to the statute as La. R.S. 9:5633.

. Although the deed lists 1835-37 Bienville Street as the municipal address, it references a tax bill for Lot 22-B at 1835 Bienville Street. The deed did not include Lot 21-A.

. The affidavit further noted that "[i]mprove-ménts bear Municipal No. 1835, 1837-39 Bienville St N.O., LA. 70112," However, the affidavit did not include Lot 22-B.

. As with NOLA’s first affidavit, the affidavit of possession further stated that ”[i]mprove-ments bear Municipal No. 1835, 1837-39 Bienville St N.O., LA. 70112,” however, it did not include Lot 22-B.

. The City’s certificate was silent as to the lot number.

. April 15, 2013 is the date the City issued a "Certifícate of Occupancy and Completion” to NOLA.

. This court in Pollard stated- the applicable standard of review as follows:
In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly erroneous standard, which precludes the setting aside of a trial court’s finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Louisiana law adopts a two-part test for the reversal of the factfin-der’s determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court .must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). “The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong but whether the factfinder's conclusion was a reasonable one." Syrie v. Schilhab, 96-1027, p. 4 (La.5/20/97), 693 So.2d 1173, 1176. Even though an appellate court may feel its own evaluations -and inferences are more reasonable than the factfinder’s, reasonable evaluations of- credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the téstimony. Rosell, 549 So.2d at 844.