| | | |
|---|---|---|
| JUDY BARRIE | * | NO. 2020-CA-0469 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| CITY OF NEW ORLEANS AND | * | |
| TIFFANY A. ROMANO | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2012-11343, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge Dale N. Atkins)

**LOBRANO, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS**

**ATKINS, J., CONCURS IN PART AND DISSENTS IN PART**

Christopher J. Davidson
John A. E. Davidson
Davidson & Davidson, APLC
2901 Independence Street, Suite 201
Metairie, LA 70006

      COUNSEL FOR PLAINTIFF/APPELLANT

Jill A. Gautreax
Amanda Howard Lowe
Kean Miller, LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLEE

        **AFFIRMED IN PART AND REVERSED IN PART**

        **MARCH 24, 2021**

This appeal is taken from the granting of a motion for summary judgment in favor of the defendant, Tiffany Romano, dismissing Judy Barrie's claims for quiet title and reimbursement. For the reasons that follow, we reinstate Ms. Barrie's claim for reimbursement.

## *Facts and Procedural History*

At issue in this case is the ownership of property located at 122 16th Street in New Orleans ("the Property"). In 2005, the property was severely damaged due to Hurricane Katrina. At the time, Ms. Romano resided in Texas. On December 6, 2011, a judgment was rendered finding the Property to be a "public nuisance."[1] Thereafter, Ms. Barrie began the process of acquiring the Property through La. R.S. 9:5633[2] by filing an affidavit of intent to possess the Property in May of 2012.

---

[1] The City of New Orleans M.C.S. Ord. No. 23046, Sec. 28–37 defines a public nuisance as:
Any unoccupied property shall be deemed a public nuisance if:
(c) The unoccupied property and its surrounding grounds are not adequately maintained thereby causing an adverse affect on nearby properties by depreciating the value, use, and enjoyment that is harmful to the public health, welfare, morals, safety and the economic stability of the area, community, or neighborhood in which the public nuisance is located.

[2] La. R.S. 9:5633 allows an individual to acquire ownership of blighted immovable property through a three-year prescriptive period.

1

Next, Ms. Barrie caused a mortgage certificate to be run by the Orleans Parish Clerk of Court on September 27, 2012.  In October 2012, she filed an affidavit of possession in the conveyance records of the Orleans Parish Clerk of Court.  After being denied a permit to renovate the Property, on November 5, 2012, Ms. Barrie sought a permit to demolish the improvements on the Property.  The City of New Orleans ("the City") denied Ms. Barrie's request due to the fact that she did not own the Property. Ms. Barrie then filed a petition for mandamus to compel the City to issue a demotion permit.  On October 30, 2013, she was issued a permit to demolish the improvements located on the Property. Ms. Barrie moved forward with the demolition.  In response to learning of the demolition, Ms. Romano posted "no trespassing" signs and erected a fence around the Property.

On December 12, 2013, Ms. Barrie filed a petition to quiet title pursuant to La. R.S. 9:5633.  The petition also sought injunctive relief and appointment of a curator ad hoc to represent Ms. Romano's interest.  After being located by the curator ad hoc, Ms. Romano responded with an answer to the petition challenging Ms. Barrie's assertions that she met the requirements of La. R.S. 9:5633 and a reconventional demand seeking to be recognized as the Property's owner and for damages relating to the destruction of the improvements on the Property.  Ms. Barrie filed an exception of *res judicata* claiming that the issues of compliance with La. R.S. 9:5633 were previously decided in the mandamus proceeding.  The trial court granted that exception.  This Court reversed the ruling and supervisory writs were denied by the Louisiana Supreme Court.  *Barrie v. City of New Orleans*,

2

2017-1001 (La. App. 4 Cir. 5/23/18), 248 So.3d 483, *writ denied* 2018-1041 (La. 10/15/18), 253 So.3d 1306.

On remand, Ms. Romano filed a motion for summary judgment maintaining that Ms. Barrie could not meet her burden of proof regarding full compliance with La. R.S. 9:5633 and therefore she could not quiet title on the Property. The trial court granted the motion for summary judgment and dismissed all of Ms. Barrie's claims. A motion for new trial was filed by Ms. Barrie seeking to have her claim for reimbursement under La. R.S. 9:5633 (E) reinstated. That motion for new trial was denied. This appeal followed.

## *Assignments of Error*

On appeal, Ms. Barrie contends that the trial court erred in finding that she had not complied with the requirements of La. R.S. 9:5633, and granting Ms. Romano's summary judgment. Alternatively, if the trial court's granting of the summary judgment was correct, Ms. Barrie maintains that her claim for reimbursement under the statute should have been preserved.

## *Standard of Review*

"A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant." *Schultz v. Guoth*, 2010-0343, p. 5 (La. 1/19/11), 57 So.3d 1002, 1005 (citing *Samaha v. Rau*, 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83; *Duncan v. U.S.A.A. Ins. Co.*, 2006-0363, p. 3 (La.11/29/06), 950 So.2d 544, 546;

3

La. C.C.P. art. 966). Appellate courts review the granting of summary judgment de novo using the same criteria as the trial court. *Id.* In accordance with La. C.C.P. art. 966(A)(3):

> …a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is not genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.

La. C.C.P. art. 966(D)(1) sets forth the shifting burden of proof as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

*Discussion*

In this case, Ms. Barrie filed a petition to quiet title. To be successful, Ms. Barrie had to establish that she complied with and satisfied all of the requirements set forth in La. R.S. 9:5633. Ms. Barrie bears the burden of proof at trial. Thus, if Ms. Romano proves the absence of one or more of the elements essential to Ms. Barrie's claim, summary judgment is appropriate. La. C.C.P. art. 966(D)(1). To acquire ownership of immovable property through an acquisitive prescription period of three years under La. R.S. 9:5633, a number of requirements must be adhered to in accordance with specific timelines.[3]

---

[3] La. R.S. 9:5633 reads in pertinent part, as follows:
A. Ownership of an immovable may be acquired by the prescription of three years without the need of just title or possession in good faith.

4

(1) The land and all improvements thereon shall ... have been declared or certified blighted after an administrative hearing, pursuant to R.S. 13:2575 or [13:]2576.

(2) The following shall be filed in the conveyance records for the parish where the immovable property is situated:

(a) An affidavit by the possessor stating the name and address of the possessor, stating the intention of the possessor to take corporeal possession of the immovable property for the possessor's own account in accordance with this Section, stating that such corporeal possession shall commence no sooner than sixty calendar days from the date of filing of the affidavit and giving a short legal description of the immovable property intended to be possessed;

* * *

(3) Within one week after the judgment, certificate or proof and affidavit are filed as described in Paragraph (A)(2) of this Section, said judgment, certificate or proof and affidavit shall be sent certified mail, return receipt requested, to the address of the owner shown on the tax rolls of the assessor, to the addresses of owners of immovable property having common boundaries with the immovable shown on the tax rolls of the assessor and to all parties having an interest in the immovable, as shown by the mortgage and conveyance records, at the address of each party as may be reasonably ascertained.

(4) Within one week after the judgment, certificate or proof and affidavit are filed as described in Paragraph (A)(2) of this Section, a notice shall be affixed in a prominent location on the immovable, stating the name and address of the possessor, stating that the possessor intends to take corporeal possession of the immovable for the possessor's own account and stating the date that the notice is so affixed.

* * *

(6) Within ninety calendar days after the date on which the affidavit described in Subparagraph (A)(2)(a) of this Section is filed in the conveyance records as required by Paragraph (A)(2) of this Section, the possessor shall request from the recorder of mortgages a mortgage certificate, setting forth the full legal description of the immovable property, to be run in the name of the owner of the immovable property for a period of time commencing with the date of the acquisition of the immovable property by the said owner and ending sixty days following the date of the filing of the affidavit described in Subparagraph (A)(2)(a) of this Section.

(7) The possessor shall take corporeal possession peaceably and no sooner than the date the mortgage certificate described in Paragraph (A)(6) of this Section is generated by the recorder of mortgages and no later than sixty calendar days following the date of such generation.

(8) The following shall be filed in the conveyance records for the parish where the immovable property is situated within ten days after the possessor has taken corporeal possession of the immovable property:

(a) An affidavit by the possessor stating the name and address of the possessor, stating that the possessor has taken corporeal possession of the immovable for the possessor's own account, stating the date that the possessor took corporeal

5

Here, the trial court found non-compliance with specific time delays associated with the statute. More specifically, the trial court found that the ninety-day time limit to request the mortgage certificate, and the three-year timeframe for ownership were not adequately satisfied. As to the ninety-day period to request the mortgage certificate, the statute mandates that:

> Within ninety calendar days after the date on which the affidavit described in Subparagraph (A)(2)(a) of this Section is filed in the conveyance records as required by Paragraph (A)(2) of this Section, the possessor shall request from the recorder of mortgages a mortgage certificate, setting forth the full legal description of the immovable property…

La. R.S. 9:5633(A)(6).

---

possession, stating the acts taken by the possessor to effect corporeal possession, and giving a short legal description of the immovable; and

(b) There shall be annexed to and filed with the affidavit described in Subparagraph (A)(8)(a) of this Section the mortgage certificate of the recorder of mortgages described in Paragraph (A)(6) of this Section, showing that sixty days have elapsed from the date of the filing of the affidavit described in Subparagraph (A)(2)(a) of this Section and showing that no notice of lis pendens has been filed against the immovable property and that the immovable property has not been seized under a writ of fieri facias or seizure and sale.

(9) Within one week after the affidavit and certificate are filed as described in Paragraph (A)(8) of this Section, said affidavit and certificate shall be sent certified mail, return receipt requested, to the address of the owner shown on the tax rolls of the assessor and to all parties having an interest in the immovable, as shown by the mortgage and conveyance records, at the address of each party as may be reasonably ascertained.

(10) Within one week after the affidavit and certificate are filed as described in Paragraph (A)(8) of this Section, a notice shall be affixed in a prominent location on the immovable, stating the name and address of the possessor, stating that the possessor has taken corporeal possession of the immovable for the possessor's own account, and stating the date that the possessor took corporeal possession.

(11) All ad valorem taxes, interest, and penalties due and payable shall be paid in full.

(12) If there are any improvements on the immovable, they shall be demolished or certificates of use and occupancy shall be obtained within two hundred seventy calendar days after the date that corporeal possession was taken.

6

The record is clear, Ms. Barrie filed the affidavit of intent to possess on May 22, 2012 and the certificate of mortgage was generated on September 27, 2012, well beyond the ninety-day statutorily mandated time delay. In an effort to overcome the delinquent certificate of mortgage, Ms. Barrie claims that her failure to properly notify the neighbors caused her to amend the affidavit of intent to possess, extending the time delays to request the certificate of mortgage.[4] As noted by the trial court, there is no provision in La. R.S. 9:5633 that allows for an amendment of the affidavit of intent to possess or the extension of the deadline under subsection (A)(6).

In addition to the non-compliance with subsection (A)(2), Ms. Romano argues that Ms. Barrie's petition to quiet title was premature. To prevail under La. R.S. 9:5633, Ms. Barrie must have possessed the Property for at least three years. According to her affidavit of possession, Ms. Barrie acquired corporeal possession of the Property on September 28, 2012. Her first supplemental petition to quiet title was filed on December 12, 2013. On the face of the petition, it is clear that at the time Ms. Barrie sought ownership of the Property she had not met the threshold requirement of possessing the Property for three years set forth in La. R.S. 9:5633(A). In opposing the proposition that her petition was premature, Ms. Barrie argues that Subsection I grants her ownership of the Property upon the issuance of the certificate of completion of the demolition. La. R.S. 9:5633(I) states:

> Notwithstanding the provisions of Subsection A of this Section, in the event that the possessor rehabilitates or constructs a residential or commercial structure in accordance with Paragraph (A)(12) of this Section, ownership of the immovable may be acquired by prescription without the need of just title or possession in good faith on the date

---

[4] The amended affidavit of possession was signed by the attorney of record, not Ms. Barrie.

7

that a certificate of use and occupancy shall be obtained by the possessor. For the purposes of this Subsection, "residential or commercial structure" shall not include garages, sheds, barns, or other outbuildings.

The plain language of Subsection I applies to a possessor that rehabilitates or constructs a property. Here, Ms. Barrie did neither. Subsection I also references (A)(12), which simply provides the time delays for demolition in the event of new construction under La. R.S. 9:5633 (I). Under the statute, the trial court found that Ms. Barrie's demolition of the property did not entitle her to immediate ownership.

Furthermore, Ms. Barrie was also required to pay all ad valorem taxes in full. La. R.S. 9:5633(A)(11). Ms. Barrie filed her affidavit of possession on July 27, 2012, and was unable to provide evidence that she had paid the 2013 ad valorem taxes. In fact, the evidence presented to the trial court indicated that Ms. Romero had paid the 2013, as well as, the 2014 and 2015 ad valorem taxes.[5]

Ms. Barrie's non-compliance with these statutory requirements were also detailed in Ms. Romano's affidavit of nullity filed pursuant to La. R.S. 9:5633(J). Subsection J of the statute provides in pertinent part:

> **In the event that the possessor does not comply with the provisions of Subsection A of this Section**…, any interested party may execute and file in the conveyance records an affidavit describing the instance or instances of the possessor's failure to comply with the provisions of Subsection A of this Section…Said filed affidavit…shall be conclusive evidence of the failure of the possessor to comply with the requirements necessary to acquire the immovable by the prescription provided for in this Section and shall act to nullify the filed affidavit of intent to possess described in Paragraph (A)(2) of this Section and the filed affidavit of possession described in Paragraph (A)(8) of this Section as if the said affidavits were never filed… (emphasis added).

---

[5] In 2014 and 2015, the City collected tax payments from Ms. Romano and Ms. Barrie.

8

Again, Ms. Barrie bore the burden of proof to establish that she complied with each requirement of La. R.S. 9:5633. The trial court found that Ms. Barrie was unable to prove full compliance with La. R.S. 9:5633, and therefore her claims were dismissed.

Full compliance necessitates adherence to all requirements and deadlines. Recently, this Court found that the failure to comply with just one of the requirements precluded obtaining ownership by acquisitive prescription under the statutory scheme. *Waiters v. deVille,* 2019-1048, p.17 (La.App. 4 Cir. 4/22/20), 299 So.3d 728,740 (possessor failed to meet the 270-day deadline associated with La. R.S. 9:5633(A)(12)); *see also, Ferrari v. NOLA Renewal Grp., LLC*, 2015-1020 (La.App. 4 Cir. 6/1/16), 194 So.3d 1246; and *Mouledoux v. Skipper*, 2012-0212 (La.App. 4 Cir. 11/7/12), 104 So.3d 585. A *de novo* review of this record, establishes Ms. Barrie's non-compliance with several of the statutory requirements. Accordingly, we find the trial court correctly ruled in favor of Ms. Romano.

Following the trial court's ruling to dismiss all of Ms. Barrie's claims, she filed a motion for new trial asserting her right to maintain the claim for reimbursement in accordance with Subsection E. That motion for new trial was denied by the trial court. In doing so, the trial court based its ruling on the fact that Ms. Barrie's actions or inactions were the cause of her failing to establish ownership and thus, she was not entitled to reimbursement. We disagree.

This Court has discussed the application of the reimbursement provision of the statute for possessors that do not fully comply with La. R.S.

9

9:5633 in *Mouledoux, Ferrari*, and *Waiters*. In, *Mouledoux*, a neighboring landowner, as the possessor, remediated the blighted property, but failed to meet the 270-day deadline to obtain a certificate of occupancy under La. R.S. 9:5633(A)(12). This Court recognized that "La. R.S. 9:5633 E(1) clearly and unambiguously states that the possessor shall be reimbursed for a litany of items expended." *Mouledoux,* 12-0212, p. 10, 104 So.3d at 590 Likewise, citing to *Mouledoux,* this Court in *Ferrari and Waiters,* found that failing to fully comply with all of the statutory requirements did not forfeit a possessor's right to claim reimbursement.

La. R.S. 9:5633(E)(1) states:

> **In the event that the owner is successful in bringing a real action against the possessor pursuant to Code of Civil Procedure Article 3651 et seq., the owner shall reimburse the possessor** for all monies advanced by the possessor for attorney fees and costs, tax statements or researches, mortgage or conveyance certificates, title abstracts, filing fees, postage, copies, printing, the payment or satisfaction of mortgages, judgments, liens, and other encumbrances, plus costs and expenses for cancellation thereof, and for all ad valorem taxes, interest, and penalties paid by the possessor on the immovable, the value of the improvements made or done on the immovable by the possessor after the date that corporeal possession was taken, and the cost or value of any repairs, rehabilitation, maintenance, removal, or demolition to the extent not otherwise included in the value of the improvements and for any other reasonable costs incurred or work done by the possessor in connection with the acquisitive prescription provided for in this Section. (emphasis added).

A real action under La. C.C.P. arts. 3651 *et seq.* is an action that determines possession or ownership. A petitory action is one that protects ownership. La.C.C.P. art. 3651. In this case, Ms. Barrie, as the possessor, filed the initial action seeking a determination of ownership in her favor pursuant to the acquisitive prescription statute. In response, Ms. Romano, as the owner

of the Property, filed a reconventional demand declaring ownership. That reconventional demand (petitory action) constituted a real action brought by the owner in which the owner was successful, just as the statute dictates. The trial court erred in dismissing Ms. Barrie's claim for reimbursement.

## *Conclusion*

Accordingly, Ms. Barrie's claim for reimbursement is reinstated. In all other respects the judgment of the trial court is affirmed.

**AFFIRMED IN PART AND REVERSED IN PART**