DANIEL L. DYSART, Judge.
| Ramsey F. Skipper, Jr., appeals two judgments issued by two divisions of Civil District Court in the same case. Because of the issuance of two judgments, two appeals have been lodged, which have been consolidated for consideration by this Court. The appellee is Dawn Jordan Mou-ledoux. For the following reasons, we dismiss the appeal in 2012-CA-0598, and affirm in part, reverse in part, and remand the appeal in 2012-CA-0212.
Both of these judgments involve the application of La. R.S. 9:5633, the blighted property/acquisitive prescription (3 years) statute, and the consequences of its application. There are no reported cases interpreting this statute.
The first lodged appeal (2012-CA-0212) asks this Court to review a judgment wherein the trial court, Judge Herbert Cade presiding, awarded Mr. Skipper reimbursement for costs expended in connection with his execution of the provisions of La. R.S. 9:5633. That judgment was rendered on July 5, 2011. Both Mr. Skipper and Ms. Mouledoux filed motions for new trial, but Mr. Skipper’s motion was denied. The trial court granted Ms. Mouledoux’s motion, and issued a Lnew judgment on November 21, 2011, repeating the language from the earlier judgment as to Mr. Skipper, and adding language maintaining Ms. Mouledoux’s possessory action, enjoining Mr. Skipper from disturbing Ms. Mou-ledoux’s peaceful possession, ordering Mr. Skipper to assert any real right he might have within thirty days of the date the judgment became executory, and dismissing Ms. Mouledoux’s claim for damages.
On December 2, 2011, Mr. Skipper filed a Motion for Suspensive Appeal in Judge Cade’s court with supporting memorandum. He attached copies of both the July 5, 2011 judgment and the November 21, 2011 judgment. In his memorandum he argued that because he was the judgment creditor, there was no reason that he should file an appeal bond, the effect of which would be to secure the payment of money owed to him. Judge Cade signed the order and did not set a bond.
Also on December 2, 2011, but after Judge Cade had signed the order for sus-pensive appeal, Ms. Mouledoux filed an Opposition to Request for Waiver of Security and requested an expedited hearing. Ms. Mouledoux also filed a motion to cancel lien and memorandum in support on *587 December 2, 201[1] h Judge Cade signed an order re-allotting the case on December 8, 2011[2], and it was re-alloted to Judge Paulette Irons.
The second appeal (2012-CA-0598) arises from a judgment rendered on Ms. Mouledoux’s Motion to Cancel Lien and Amended Motion to Cancel Notice of Lis | sPendens, which Mr. Skipper had filed as notice to third parties concerning the pending litigation. These motions were heard by Judge Irons and a judgment cancelling the lien and notice of lis pen-dens was rendered on March 13, 2012. Mr. Skipper filed a motion for suspensive appeal to that judgment as well. Judge Irons granted the motion for suspensive appeal, and set a bond of $10,000.
Mr. Skipper took a writ to this Court challenging the bond, which was denied. On March 21, 2012, Ms. Mouledoux filed in this Court a motion to dismiss the appeal of the March 13, 2012 Judgment. She incorrectly filed it in the record for No. 2012-CA-0212, the appeal of Judge Cade’s November 21, 2011 judgment. This Court dismissed the motion as premature because the record for the appeal of Judge Irons’ March 13, 2012 judgment had not yet been lodged. On April 24, 2012, Ms. Mouledoux re-filed her motion to dismiss in the proper record, which was designated as 2012-CA-0598.
A. Motion to Dismiss Appeal No. 2012-CA-0598:
The appeal which Ms. Mouledoux seeks to dismiss is of the March 13, 2012 judgment rendered by Judge Irons. We agree that the appeal should be dismissed, but not for the reasons assigned by Ms. Mouledoux. Rather, we find that the judgment was granted by the trial court when it had no jurisdiction to do so.
Louisiana Code of Civil Procedure art. 2088 provides in pertinent part:
A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the |4trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to:
=:= *• *
(7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal;
(8) Enter orders permitting the deposit of sums of money within the meaning of Article 4658 of this Code[3];
[[Image here]]
B. In the case of a suspensive appeal, when the appeal bond is not timely filed and the suspensive appeal is thereby not perfected, the trial court maintains jurisdiction to convert the suspensive appeal to a devolutive appeal, except in an eviction case.
Considering the above statutory language, it is clear that the March 13, 2012 *588 judgment rendered after Mr. Skipper had perfected an appeal is null and void as the trial court no longer had jurisdiction to entertain Ms. Mouledoux’s motion. Any challenge to the suspensive appeal should have been filed in this Court as previously stated herein.
We therefore find that the order of sus-pensive appeal signed by Judge Cade on December 2, 2011, divested the trial court of jurisdiction. The March 13, 2012 judgment signed by Judge Irons cancelling the first lien in favor of Mr. Skipper and the notice of lis pendens is vacated.
We dismiss this appeal on our own motion.
|fiB. Appeal No. 2012-CA-0212:
We now address the merits of the appeal of the November 21, 2011 judgment rendered by Judge Cade filed in 2012-CA-0212.
The subject property is located at 6470 Gen. Diaz in the Lakeview area of New Orleans, which was inundated with flood waters following Hurricane Katrina. The property is owned by appellee, Dawn Mou-ledoux. The appellant, Ramsey Skipper, Jr., lives directly across the street from the subject property. Four years after she evacuated for Hurricane Katrina, Ms. Mouledoux’s property remained virtually untouched. The only apparent maintenance to the property was occasional grass cutting.
Mr. Skipper and his wife (not a party to this lawsuit), were aggrieved by what they considered an eyesore, especially considering that most other neighbors had either torn down their homes or restored them. On October 16, 2009, the City of New Orleans adjudicated Ms. Mouledoux’s property blighted and a public nuisance. A fine of $575 was assessed and a daily fine of $500 began to accrue as of the date of adjudication. The daily fine eventually totaled $15,000, the maximum assessment.
In the early summer of 2010, no visible steps had been taken by Ms. Mouledoux to remediate, despite her knowledge that the property had been adjudicated blighted. Mr. Skipper sought the advice of counsel as to how he could take action against the homeowner. Mr. Skipper testified that he was aware of La. | fiR.S. 9:5633, the blighted property statute, but because of its complexity, he felt the need of counsel to assist in executing the provisions of the statute.
On July 7, 2010, Mr. Skipper took his first step in the process by filing an affidavit of intent to take corporeal possession of the property as per La. R.S. 9:5633 A(2)(a). He attached all the necessary documents and the requisite notices were sent by certified mail to Ms. Mouledoux, the adjoining property owners and others. An additional notice was posted on the front door of the property.
On October 19, 2010, Mr. Skipper took corporeal possession of the property by filing another affidavit in the City’s conveyance office, and, although not required by the statute, attaching a copy of the contract in which he had entered with a contractor to remediate the blighted condition of the property. Again, the required notices were sent to Ms. Mouledoux and the neighbors, which included copies of the affidavit and the contract. Another notice was posted on the front door of the property. Because Mr. Skipper was now the legal possessor of the property, he repaired the entry doors to the house, changed the locks, and began work to remediate the blight.
Despite having received two notices of Mr. Skipper’s intentions concerning the property, and two notices being posted on the front door of her property, Ms. Moule-doux did not make any contact with or *589 inquiry to Mr. Skipper. Pursuant to the statute, Mr. Skipper was required to remove the blighted condition and pay the property taxes by February 1, 2011; however, before he would be allowed to pay the taxes, he was required to pay the fines that had been assessed against the 17property. Mr. Skipper obtained a rescission of the adjudication of blight and the City relieved his obligation to pay the fines.
On November 1, 2010, a work crew appeared at the property and advised Mr. Skipper they were there at the request of Ms. Mouledoux to tear down the house. Mr. Skipper was concerned about his liability exposure as the corporeal possessor of the property, and was further concerned that if the house was torn down, he would have no evidence of the steps .he had taken under the statute to remediate the blight. He stopped the demolition.
There was no contact between Mr. Skipper and Ms. Mouledoux until December 5, 2010, when Mr. Skipper’s attorney received a letter from an attorney representing Ms. Mouledoux, requesting copies of the documents Mr. Skipper had filed pursuant to the statute, and the amount of money expended in connection with the property. On December 22, 2010, Mr. Skipper, through counsel, complied with the request and in his response indicated a total of $32,912.87 had been expended, which included the costs of two construction contracts, filing fees, supplies and attorney’s fees.
The work on the house continued, and in January of 2011, Mr. Skipper proved to the City that the blight had been removed and the blight adjudication was rescinded. The City waived the $15,000 fine, and only required that Mr. Skipper pay the initial fine of $575, and the property taxes. In addition to removing the blight, an additional requirement of the statute was to have the house renovated within 270 days of taking possession, such that a | Rcertificate of use and occupancy could be issued. In February of 2011, Mr. Skipper considered his options of either tearing down the house or completing the renovation. Mr. Skipper sought financing to renovate the house, but was turned down by the lender. He then applied to the City of New Orleans for a demolition permit, but was turned down as he was not the owner.
On March 24, 2011, Ms. Mouledoux filed a possessory action and sought a temporary restraining order against Mr. Skipper.
This case was tried before Judge Cade on April 4, 29 and June 2, 2011. Initially, the first hearing was to consider Ms. Mou-ledoux’s request for a preliminary injunction. However, Ms. Mouledoux filed amendments to her original claims seeking damages. She alleged that Mr. Skipper was in bad faith and accused him of filing false affidavits to acquire possession of her property.
Judge Cade rendered judgment on July 5, 2011 awarding Ms. Mouledoux possession of the property, and awarding Mr. Skipper $14,703.74 as reimbursement of monies advanced by him in accordance with La. R.S. 9:5633(E), plus 12% interest until paid. The judgment also provided for a first lien and privilege on the immovable property in favor of Mr. Skipper. As stated above, both parties moved for a new trial.
A judgment was rendered on November 21, 2011, denying Mr. Skipper’s motion and granting Ms. Mouledoux’s motion in part. The judgment recognized Ms. Mou-ledoux as the lawful possessor of the property and enjoined Mr. Skipper from interfering with her peaceful possession. It ordered Mr. Skipper to assert any |9real right he may have pursuant to La. R.S. *590 9:5633. The judgment denied Ms. Moule-doux’s claim for damages. The language from the July 5 judgment granting Mr. Skipper an award of $14,703.73 was then repeated, and in its reasons for judgment the court stated that costs expended after November 1 were unnecessary.
Mr. Skipper filed a timely suspensive appeal to the judgment.
C. Discussion:
In his first assignment of error, Mr. Skipper argues that La. R.S. 9:5633 E(l) requires that he be reimbursed for “all monies” advanced by him in connection with the steps he took to comply with the statute.
La. R.S. 9:5633 E(l) provides:
In the event that the owner is successful in bringing a real action against the possessor pursuant to Code of Civil Procedure Article 3651, et seq., the owner shall reimburse the possessor for all monies advanced by the possessor for attorney fees and costs, tax statements or researches, mortgage or conveyance certificates, title abstracts, filing fees, postage, copies, printing, the payment or satisfaction of mortgages, judgments, liens, and other encumbrances, plus costs and expenses for cancellation thereof, and for all ad valorem taxes, interest, and penalties paid by the possessor on the immovable, the value of the improvements made or done on the immovable by the possessor after the date that corporeal possession was taken, and the cost or value of any repairs, rehabilitation, maintenance, removal, or demolition to the extent not otherwise included in the value of the improvements and for any other reasonable costs incurred or work done by the possessor in connection with the acquisitive prescription provided for in this Section, (emphasis added.)
The statute is complex and requires strict compliance, as the penalty for noncompliance results in the possessor losing all of his rights under the statute, as |inwell as reimbursement of the money invested. The statute also requires swift action as the possessor must either obtain a certificate of use and occupancy or demolish the property within 270 days of taking possession or lose his rights under the statute. The possessor must pay all fines, taxes, interest and penalties on the property.
The trial court made a factual finding that monies spent by Mr. Skipper after November 1, 2011, the date Ms. Moule-doux sent a crew to demolish the house, were unnecessary. In other words, if Mr. Skipper had allowed the house to be torn down he would not have had to spend any more money. While this finding may be reasonable, it is contrary to the plain language of the statute.
Louisiana Civil Code Article 9 provides that “[wjhen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” La. Civ.Code Art. 9; Sherwood Forest Country Club v. Litchfield, 08-0194, pp. 8-9 (La.12/19/08), 998 So.2d 56, 62; New Orleans Redevelopment Authority v. Burgess, 08-1020, p. 21 (La. 4 Cir. 7/8/09), 16 So.3d 569, 584.
The first part of La. R.S. 9:5633 E(l) clearly and unambiguously states that the possessor shall be reimbursed for a litany of items expended. If an expenditure falls outside of the list of mandatory reimbursable items, only then may the court resort to a reasonableness interpretation. The sticking point in the list of mandatory reimbursable items is the second part, which provides for the |nreimbursement of the “value of the improvements made or done *591 on the immovable by the possessor after the date that corporeal possession was taken, and the cost or value of any repairs, rehabilitation, maintenance, removal or demolition to the extent not otherwise included in the value of the improvements.... ” Value is something upon which opinions may and often will differ.
The legislature recognized this fact and included within the statute a provision for contested valuations. La. R.S. 9:5633 E(4) provides: “In the event that the owner contests the validity of such documentation (referencing Section E(3) which establishes what evidence is necessary to prove expenses), appraisers shall be appointed and shall proceed in the manner set for in R.S. 47:2223 to determine the cost or value of such repairs, rehabilitation, maintenance, removal, or demolition.” The trial court by-passed this provision and made its own determination of value. This was error.
Mr. Skipper’s second assignment of error is that the trial court erred in using November 1, 2010, as the reimbursement cut-off date. We agree. The November 1 date was the date Ms. Mouledoux sent a crew to demolish the house; however, Ms. Mouledoux, although the owner, did not possess the property. She was fully aware of that fact as evidenced by the numerous notices she received informing her that she had been dispossessed of the property pursuant to La. R.S. 9:5633.
Louisiana Revised Statute 9:5633 D provides:
If the possessor has met the requisites listed in Subsection A of this Section, the possessor shall not be liable to the owner of the immovable for any tortious act related to the possession of the possessor which may 11?have occurred on or after the date that corporeal possession was taken, including but not limited to trespass and demolition of the improvements, and such possessor shall not be subject to criminal prosecution for trespass upon the immovable or for demolition of the improvements. However, nothing provided in this Subsection shall prevent the owner from instituting and prosecuting a real action against the possessor pursuant to Code of Civil Procedure Article 3651, et seq.
Ms. Mouledoux admits that she did not consider what to do with her property until sometime in 2009, when she ultimately decided to tear down the house[4]. She testified that she struggled with gathering the paperwork necessary to obtain a demolition permit. She was unaware that Mr. Skipper had “designs” on her house. We note that the record testimony reveals she was aware, albeit informally, in October of 2009 at the blight hearing which she attended, that Mr. Skipper had an interest in her property. Despite this knowledge and the notice she received in July 2010 of Mr. Skipper’s intent to proceed under La. R.S. 9:5633, she refused to communicate with Mr. Skipper about her plans to demolish the house. Ms. Mouledoux argues that Judge Cade’s decision was correct, and although he did not address the “legal underpinnings” of his decision, he properly reacted to the “fundamental wrongness of a supposed blight remediator preventing the owner’s remediation.... ” We find it was error for the trial court to determine “fundamental wrongness” when the statute is clear and unambiguous.
Ms. Mouledoux did not have the right to enter onto the property on November 1, 2010, without Mr. Skipper’s permission. La. Civ.Code arts. 3424, et 11Sseq. She was represented by counsel during this pro *592 cess[5] and should have filed a petitory action to assert her rights to this property. La.Code Civ. Proc. art. 3651 provides for an owner, who is not in possession of immovable property, to obtain a judgment recognizing her ownership. Ms. Moule-doux did not file any court action until March 24, 2011, when she filed the posses-sory action. Thus, the trial court erred in determining that Mr. Skipper should not be allowed any reimbursement after November 1, 2010.
Because Mr. Skipper was lawfully in possession of the property on November 1, 2010, and was still bound to follow the requirements of La. R.S. 9:5638, we find the trial court erred in ruling that he proceeded at his “own risk” to continue the process of rehabilitating the house. On November 1, 2010, the house was still in a blighted condition and Mr. Skipper had deadlines to meet if he was to remain in compliance with the statute.
To find that Mr. Skipper’s ultimate decision to demolish the property somehow made Ms. Mouledoux’s illegal actions, i.e., trying to demolish the property while not in possession, legal is contrary to the plain language of the statute. The trial court’s determination indicates that Mr. Skipper acted in bad faith when he stopped the demolition. La. R.S. 9:5633 A provides in part that “[ojwnership of an immovable may be acquired by the prescription of three years without the need of just title or possession in good faith.” (emphasis added.) Mr. Skipper had only taken corporeal possession of the property on October 19, [h2010, and had yet to determine the best course of action for the house. In fact, as he found out, the department responsible for issuing demolition permits would not give permits to La. R.S. 9:5633 possessors. The department was of the opinion that possessors were “squatters.”
The third assignment of error raised by Mr. Skipper is that the trial court erred in its application of the statute when it ruled that he was only entitled to a percentage of the cost of the work completed prior to November 1, 2010. This argument is similar to his first assignment of error. We agree that the mandatory language of the statute does not provide for the conclusions reached by the trial court. There is no provision for a cut-off date, nor is there a provision for reimbursement by percentage of work done.
The evidence produced at trial is replete with copies of contracts, pictures, and receipts. As stated infra, Mr. Skipper is entitled to be reimbursed for his costs expended to comply with the first part of Section E(l) of the statute. Because there is a dispute as to the value of work performed on the property, the statute provides that appraisers shall be appointed to determine the cost of repairs, rehabilitation, maintenance, removal, or demolition. Once that step has been completed, the trial court can make a decision on the amount of reimbursement. However, there is no provision for awarding a percentage of expenses based on a cut-off date or the court’s own determination of value.
|1BP. Attorney’s Fees:
Although not specifically addressed as an assignment of error, we are compelled to address the issue of attorney’s fees, especially since a large portion of the monies for which Mr. Skipper seeks reimbursement are fees charged by his counsel in connection with this litigation.
*593 Louisiana Revised Statute 9:5633 E(l), which is set forth above, includes the reimbursement of attorney’s fees and costs. We interpret that provision to mean attorney’s fees incurred by the possessor to aid him in complying with the provisions of the statute. Mr. Skipper is not entitled to attorney’s fees for defending against the statutory right of Mrs. Mouledoux to challenge Mr. Skipper’s possession of her property.
For the foregoing reasons, we reverse the judgment awarding Mr. Skipper $14,703.74, and remand this matter for the trial court to appoint appraisers in accordance with La. R.S. 9:5633 E(4). The trial court is also ordered to evaluate Mr. Skipper’s claims for attorney’s fees and assess an amount due in accordance with this opinion. The remainder of the judgment is affirmed, including Mr. Skipper’s right of first lien and privilege.
E. Conclusion:
In summary, we dismiss the appeal lodged in 2012-CA-0598 on our own ] ^motion. In appeal 2012-CA-0212, we affirm in part, reverse in part, and remand with instructions set forth herein.
APPEAL IN 2012-CA-0598 DISMISSED; APPEAL IN 2012-CA-0212, AFFIRMED IN PART; REVERSED IN PART; REMANDED

. The lien Ms. Mouledoux sought to cancel was Mr. Skipper’s first lien on the property securing his interest pursuant to the November 21, 2011 judgment.

. Judge Cade, while a sitting judge on the Civil District Court, ran for and was elected to a judgeship in Orleans Parish Traffic Court.

.Article 4658 provides in part that a plaintiff may, with leave of court, deposit into the court’s registry, monies which are claimed by defendant(s) and which plaintiff admits are due.

. This statement is troubling because in her testimony she stated that her house was "minimally blighted.” It begs the question: Why would she tear it down?

. This statement is made because of the numerous attempts by Ms. Mouledoux in plead-tags and in argument to plead ignorance and/or innocence with regard to the law.