**BRITTANY AND JAMAR WAITERS**     \*     **NO. 2019-CA-1048**

        \*

**VERSUS**         **COURT OF APPEAL**

        \*

**RENEE E. DEVILLE**         **FOURTH CIRCUIT**

        \*

        **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-13046, DIVISION "L"
Honorable Kern A. Reese, Judge

\* \* \* \* \* \*

**Judge Rosemary Ledet**

\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Regina Bartholomew-Woods)

Christopher J. Davidson
John A. E. Davidson
DAVIDSON & DAVIDSON, APLC
2901 Independence Street, Suite 201
Metairie, LA 70006

      COUNSEL FOR PLAINTIFF/APPELLEE

Kyle Salvador Sclafani
THE LAW OFFICE OF KYLE S. SCLAFANI
4130 Canal Street, Suite A
New Orleans, LA 70119

Jack Edward Morris
JACK E. MORRIS, ATTORNEY AT LAW, LLC
4051 Veterans Memorial Boulevard, Suite 208
Metairie, LA 70002

      COUNSEL FOR DEFENDANT/APPELLANT

        **APPEAL CONVERTED TO WRIT;**
        **WRIT GRANTED; JUDGMENT**
        **REVERSED; AND CASE REMANDED**

        **April 22, 2020**

This a dispute over ownership and possession of immovable property located at 4609-11 Freret Street in New Orleans, Louisiana (the "Property"). The plaintiff-in-reconvention—Renee deVille (the tax sale purchaser of the Property)—appeals the trial court's judgment sustaining a peremptory exception of no cause of action filed by the defendants-in-reconvention— Brittany and Jamar Waiters (the successors-in-interest to the tax sale debtors of the Property). For the reasons that follow, we convert the appeal to an application for supervisory writ; grant the writ; reverse the trial court's judgment sustaining the peremptory exception of no cause of action; and remand the case for further proceedings.

## JURISDICTION

Appellate courts have a duty to determine whether subject matter jurisdiction exists to entertain an appeal, even if the parties fail to raise the issue. *Moon v. City of New Orleans*, 15-1092, 15-1093, p. 5 (La. App. 4 Cir. 3/16/16), 190 So.3d 422, 425. This appeal is from a partial final judgment—

a judgment dismissing a reconventional demand on an exception of no cause of action. Although the judgment completely dismisses the reconventional demand, the judgment does not terminate the litigation between the parties—the principal demand between the parties remains. The right to appeal the partial final judgment is governed by La. C.C.P. art. 1915(B).[1] Given the trial court's failure to designate the judgment as final pursuant to La. C.C.P. art. 1915(B), the partial final judgment is a non-appealable judgment.[2]

Nonetheless, this court has exercised its discretion to convert an appeal of a non-appealable judgment to an application for supervisory writs

---

[1] We acknowledge the contrary holding in *GR Restaurants, LLC v. Suzanne Savoy Santillo, LLC*, 18-702, pp. 3-4 (La. App. 3 Cir. 12/6/18) (*unpub.*), 2018 WL 6432967, *2 (observing that a judgment dismissing a reconventional demand falls under La. C.C.P. art. 1915(A), because it dismisses all the claims of the parties to the reconventional demand—albeit not the principal demand—and thus does not require a designation of finality to be appealable). We, however, find the following language in La. C.C.P. art. 1915(B)(1) dictates a different result:

> When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

[2] Article 1915(B) has two subparts:

- "[T]he judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay." La. C.C.P. art. 1915(B)(1); and

- "In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal and may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties." La. C.C.P. art. 1915(B)(2).

*See also* La. C.C.P. art. 1911(B) (providing, in part, that "[n]o appeal may be taken from a partial final judgment under Article 1915(B) until the judgment has been designated a final judgment under Article 1915(B)").

when certain conditions are met.[3] Those conditions are met here. The motion

for appeal was filed within thirty days of the date of the notice of judgment,

and fundamental fairness and judicial efficiency warrant our exercising the

discretion to do so. Accordingly, we convert the appeal to an application for

supervisory writ.

## FACTUAL AND PROCEDURAL BACKGROUND

To provide a framework for deciding this case, we set forth the

following chronology of the pertinent factual and procedural events:[4]

- December 3, 2009—Ms. deVille successfully purchased a 1% ownership interest in the Property at a tax sale for unpaid *ad valorem* taxes; at the time of the tax sale, the titled owners of the Property were Ruth Thompson and her daughter, Beulah Mae Jefferson;

- February 12, 2010—Ms. deVille's Tax Sale Deed[5] was recorded;

---

[3] This court has converted a non-appealable judgment to an application for supervisory writs when the following two conditions are met:

- The motion for appeal has been filed within the thirty-day time period allowed for the filing of an application for supervisory writs under Rule 4-3 of the Uniform Rules, Courts of Appeal; and

- When the circumstances indicate that an immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court's decision would terminate the litigation.

*Mandina, Inc. v. O'Brien*, 13-0085, p. 8 (La. App. 4 Cir. 7/31/13), 156 So.3d 99, 104; *see also Stelluto v. Stelluto*, 05-0074, p. 7 (La. 6/29/05), 914 So.2d 34, 39 (observing that "the decision to convert an appeal to an application for supervisory writs is within the discretion of the appellate courts").

[4] The factual and procedural framework set forth in this opinion is based upon the allegations set forth in Ms. deVille's reconventional demand. Given the sole issue presented by this appeal is whether the peremptory exception of no cause of action was correctly sustained, we are required to accept as true all well-pleaded allegations of fact set forth in the petition (here, the reconventional demand). *See Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1235 (La. 1993).

[5] Although Ms. deVille was issued a "tax sale deed," the correct terminology, under the 2008 revisions of the tax sale laws, is a "tax sale certificate." *See* Denis W. Barry, Jr., *Louisiana Tax Sales: A Mystery Unraveled*, 41 S.U.L. REV. 345, 356 (2014) (observing that the 2008 revisions of the tax sale laws changed the term "tax sale deed" to "tax sale certificate" in the governing statutes, despite the continued use of the term "tax deed" in the Louisiana Constitution); s*ee also Cent. Properties v. Fairway Gardenhomes, LLC*, 16-1855, p. 11 (La. 6/27/17), 225 So.3d 441, 448 (observing that "[u]nder the tax sale

- September 28, 2011—As a tax sale purchaser of blighted property,[6] Ms. deVille filed a verified petition for a writ of possession pursuant to La. R.S. 47:2158 to obtain lawful possession of the Property and to begin repairs; on the same date, the Orleans Parish Civil District Court ("CDC") issued a writ of possession (the "Writ of Possession"), commanding the Orleans Parish Sheriff (the "Sheriff") to deliver possession of the Property to Ms. deVille;

- October 19, 2011—The Sheriff delivered possession of the Property to Ms. deVille;[7]

- December 29, 2011—Ms. deVille recorded the first of four Statements of Lien or Privilege against the Property in the sum of $10,200.00; this first lien was for the expenses incurred in securing the Property, removing exterior debris, and addressing code violations;[8]

- February 3, 2012—Seeking to obtain ownership of the Property pursuant to La. R.S. 9:5633 (the blight acquisitive prescription statute), Ms. deVille recorded an Affidavit of Intent to Possess ("Affidavit of Intent"); Ms. deVille avers that she thereafter followed

laws as amended in 2008, the tax collector no longer auctions the real estate itself; instead, the tax collector auctions a tax sale title to the property, as evidenced by a tax sale certificate per La. Rev. Stat. 47:2155, which neither transfers nor terminates the property interest of any person in the property").

[6] Ms. deVille avers in her reconventional demand that, "[a]t the time the petition was filed," the Property was subject to a judgment obtained against the previous owners for violating the municipal ordinances by "allowing a public nuisance and blighted property." She, however, fails to specify the particular petition to which she is referring.

[7] From October 19, 2011 until the Waiters filed this suit, Ms. deVille has maintained possession of the Property.

[8] The other three Statements of Lien and Privilege were recorded as follows:

- December 28, 2012—Ms. deVille recorded a second Lien against the Property in the sum of $77,900.92; this second lien was for the additional labor and material expended in improving the Property and unpaid property taxes;

- December 30, 2013—Ms. deVille recorded a third Lien against the Property in the sum of $230,084.31; this third lien was for the additional labor and material expended in improving the Property and unpaid property taxes; and

- March 21, 2019—Ms. deVille recorded a fourth Lien against the Property in the sum of $124,246.64; this fourth lien was for the additional insurances, taxes, labor, and material expended in maintaining the Property.

all but one of the twelve steps of the process for perfecting ownership set forth in La. R.S. 9:5633;[9]

- November 5, 2012—Ms. deVille applied for and obtained permits to renovate the Property from the City of New Orleans (the "City").

- August 5, 2013—The City issued a certificate of occupancy;[10]

- October 18, 2018—Roosevelt Thompson—purporting to be Ruth Thompson's grandson and Beulah Mae Jefferson's son—filed a Petition to Administer the Successions of Ruth Thompson and Beulah Mae Jefferson (the "Successions"); Mr. Thompson also executed and filed, pursuant to La. R.S. 9:5633(J),[11] an affidavit of nullification (the "Affidavit of Nullification");[12] and

---

[9] Ms. deVille acknowledges that she failed to comply with the last step—either demolishing the improvements on the Property or obtaining a certificate of occupancy within 270-calendar days after the expiration of the time set forth in the statute. La. R.S. 9:5633(A)(12) (providing that "[i]f there are any improvements on the immovable, they shall be demolished or certificates of use and occupancy shall be obtained within two hundred seventy calendar days after the date that corporeal possession was taken"). Nonetheless, she outlines the dates on which she complied with the other steps required by La. R.S. 9:5633. The Waiters, on the other hand, contend that Ms. deVille, because she took possession of the Property pursuant to La. R.S. 47:2158, failed to comply with two other provisions of the statute. The two other provisions that the Waiters alleged Ms. deVille failed to comply with are noted elsewhere in this opinion.

[10] Although Ms. deVille did obtain a certificate of occupancy, as noted elsewhere in this opinion, Ms. deVille acknowledges that she failed to obtain a certificate of occupancy within 270 calendar days of taking possession, as required by La. R.S. 9:5633(A)(12).

[11] La. R.S. 9:5633(J) provides:

> In the event that the possessor does not comply with the provisions of Subsection A of this Section or if a judgment described in Subsection B of this Section is rendered, any interested party may execute and file in the conveyance records an affidavit describing the instance or instances of the possessor's failure to comply with the provisions of Subsection A of this Section or may file in the mortgage records a certified copy of the notice of the judgment described in Subsection B of this Section. Said filed affidavit or filed certified notice of judgment shall be conclusive evidence of the failure of the possessor to comply with the requirements necessary to acquire the immovable by the prescription provided for in this Section and shall act to nullify the filed affidavit of intent to possess described in Paragraph (A)(2) of this Section and the filed affidavit of possession described in Paragraph (A)(8) of this Section as if the said affidavits were never filed, without any need to have said affidavits canceled or released of record.

[12] The Affidavit of Nullification is mentioned only twice in Ms. deVille's reconventional demand; the contents of the Affidavit of Nullification are not explained. In their petition, the Waiters stated that the Affidavit of Nullification identified the following three failures by Ms. deVille to comply with the twelve steps required by La. R.S. 9:5633:

- November 13, 2018—the Successions sold the Property, with court approval,[13] to the Waiters in a cash sale, which was recorded and which Ms. deVille avers "caused a disturbance-in-law."

In December 2018, the Waiters commenced this suit, captioned as a "Petition to Annul Tax Title, Declaratory Judgment, and Petitory Action." In their petition, the Waiters averred that they were the "sole owners" of the Property, acquiring title by a cash sale from the Successions. The Waiters further averred that the defendant, Ms. deVille, was the holder of a Tax Sale Deed purportedly conveying a 1% ownership interest in the Property for unpaid *ad valorem* taxes. According to the Waiters, the tax sale was an absolute nullity given the notice and advertisement were constitutionally infirm.

In their petition, the Waiters additionally averred that Ms. deVille had made the following other filings into the record regarding the Property: (i) the Affidavit of Intent, pursuant to La. R.S. 9:5633; (ii) the Writ of Possession, pursuant to La. R.S. 47:9158; and (iii) a statement of lien and

---

- Ms. deVille obtained physical possession of the premises before the issuance of the mortgage certificate in violation of La. R.S 9:5633(A)(7);

- Ms. deVille failed to file an affidavit of possession within ten days of taking physical possession in violation of La. R.S 9:5633(A)(8); and

- Ms. deVille failed to obtain a certificate of occupancy within 270 days after the date physical possession was taken in violation of La. R.S. 9:5633(A)(12).

[13] As the Successions' administrator, Mr. Thompson filed a Petition for Authority to sell the Property, representing that the Property was blighted, that taxes remained unpaid on the Property, and that the Property was worth $100,000. Ms. deVille alleges that the cash sale is null based on *lesion beyond moiety*. The issue of the validity of the cash sale is not before us. Rather, the *lesion beyond moiety* issue, as well as other disputes between the parties, is the subject of a separate proceeding—the Successions matter. The trial court denied Ms. deVille's motion to stay this case pending the resolution of the disputes between the parties in the Successions matter.

privilege.[14] The Waiters sought to annul those other filings. Lastly, the Waiters sought recognition of the effect of the Affidavit of Nullification.

Ms. deVille answered the petition and filed a reconventional demand. The thrust of her reconventional demand was that she complied with the spirit as well as the requirements of La. R.S. 9:5633 and, thus, acquired ownership of the Property under that acquisitive prescription statutory scheme. Alternatively, she sought reimbursement for the amounts that she paid in association with the Property. The relief she requested in her reconventional demand consisted of the following: (i) confirmation of her compliance with La. R.S. 9:5633; (ii) nullification of the Affidavit of Nullification; (iii) reimbursement of all amounts she paid in association with the Property pursuant to La. R.S. 9:5633(E); and (iv) damages (unjust enrichment).

The Waiters, as defendants-in-reconvention, answered and filed a peremptory exception of no cause of action. The Waiters emphasized that Ms. deVille, in her answer and reconventional demand, acknowledged that—due to her failure to comply with at least one of the twelve statutory steps—she has no claim of ownership to the Property under La. R.S. 9:5633. The Waiters contented that Ms. deVille could not prevail on any claim for ownership of the Property. They emphasized that Ms. deVille purported to assert a variety of claims sounding in equity, which are specifically excluded by R.S 9:5633. They further emphasized that, despite that Ms. deVille holds

---

[14] The Waiters refer only to the first of the four Statements of Lien and Privilege in their petition.

a 1% Tax Sale Deed (certificate), she has failed to file any proceeding to quiet her tax title.

Following a hearing, the trial court sustained the exception of no cause of action, dismissed the reconventional demand, and refused to allow leave to amend. This appeal followed.

### NO CAUSE OF ACTION PRINCIPLES

The narrow issue presented here is whether Ms. deVille's reconventional demand asserts a cause of action against the Waiters. We hold that it does. Reviewing a trial court's ruling sustaining an exception of no cause of action, appellate courts apply a *de novo* standard for two reasons: (i) the exception raises a question of law; and (ii) a trial court's ruling on the exception, as a general rule,[15] is based solely on the sufficiency of the petition. *See City of New Orleans v. Bd. of Comm'rs of Orleans Levee Dist.*, 93-0690, p. 28 (La. 7/5/94), 640 So.2d 237, 253; *Ramey v. DeCaire*, 03-1299, pp. 7-8 (La. 3/19/04), 869 So.2d 114, 119; *Fink v. Bryant*, 01-0987, p. 4 (La. 11/28/01), 801 So.2d 346, 349.

Reaching the merits is not allowed on an exception of no cause of action. *Couvillion Grp., L.L.C. v. Plaquemines Par. Gov't*, 19-0564, p. 4 (La. App. 4 Cir. 12/11/19), 286 So.3d 1129, 1133 (observing that "[a]n appellate court's de novo review does not include considering the merits of

---

[15] Exceptions to the general rule that a trial court's ruling on an exception of no cause of action is based solely on the sufficiency of the petition have been recognized. *See, e.g., Marchand v. Estate of Loga*, 354 So.2d 576, 579 (La. App. 4th Cir. 1977) (observing that exhibits made part of the petition can be considered when determining the validity of an exception of no cause of action); *Woodland Ridge Association v. Cangelosi*, 94-2604, p. 3 (La. App. 1 Cir. 10/6/95), 671 So.2d 508, 510 (observing that the jurisprudence recognizes an exception to this rule allowing the court to consider evidence which is admitted without objection to enlarge the pleadings). None of the exceptions is applicable here.

the cause of action"). Rather, "[t]he limited function of an exception of no cause of action is to determine whether the law provides a remedy to anyone assuming that the facts plead in the petition will be proven at trial." *Farmco, Inc. v. W. Baton Rouge Par. Governing Council*, 01-1086, p. 1 (La. 6/15/01), 789 So.2d 568, 569 (*per curium*). "In making that limited determination, 'all doubts are resolved in plaintiff's favor.'" *Id*. (quoting 1 Frank L. Maraist & Harry T. Lemmon, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE § 6.7(2) (1999)).

The peremptory exception of no cause of action is set forth in La. C.C.P. art. 927(A)(5). "Unlike a motion for summary judgment, in making the determination on an exception of no cause of action, all well pleaded allegations of fact in the petition [here, the reconventional demand] must be accepted as true, and no reference can be made to extraneous supportive or controverting evidence." *Pelts & Skins, L.L.C. v. La. Dept. of Wildlife and Fisheries*, 05-0952, p. 8 (La. App. 1 Cir. 6/21/06), 938 So.2d 1047, 1052-53.

Summarizing the general principles applicable to reviewing an exception of no cause of action, this court in *Couvillion Grp.* observed:

> • A "cause of action" refers to the operative facts which give rise to the plaintiff's right to judicially assert an action against the defendant.
>
> • The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the plaintiff's petition by determining whether the law affords a remedy on the facts alleged in the petition.
>
> • The exception is triable on the face of the pleadings and, for purposes of resolving the issues raised by the exception, the court must presume that all well-pleaded facts in the petition are true.
>
> • The burden of demonstrating that a petition fails to state a cause of action is on the mover.

19-0564, pp. 3-4 (La. App. 4 Cir. 12/11/19), 286 So.3d 1129, 1133.

Both the Louisiana Supreme Court and this court have observed the well-settled principles that an exception of no cause of action should not be sustained unless it is evident that the plaintiff can prove no set of facts in support of any of the alleged claims set forth in the petition and that every reasonable interpretation must be applied to a petition in favor of maintaining its sufficiency. *See Fink*, 01-0987 at p. 4, 801 So.2d at 349; *Jackson v. State ex rel. Dept. of Corrections*, 00-2882, p. 4 (La. 5/15/01), 785 So.2d 803, 806; *Indus. Cos., Inc. v. Durbin*, 02-0665, p. 7 (La. 1/28/03), 837 So.2d 1207, 1213; *New Jax Condominiums Ass'n v. Vanderbilt New Orleans, LLC*, 16-0643, p. 12 (La. App. 4 Cir. 4/26/17), 219 So.3d 471, 479. As a practical matter, "'[a]n exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief.'" *Couvillion Grp*., 19-0564, p. 5, 286 So.3d at 1134 (quoting *City of New Orleans v. Bd. of Directors of Louisiana State Museum*, 98-1170, p. 10 (La. 3/2/99), 739 So.2d 748, 756).

Although the Louisiana Legislature, by enacting La. C.C.P. art. 1915, authorized a trial court to sustain an exception as to one or more but less than all of the claims, demands, issues, or theories against a party, "the Louisiana Supreme Court has found that such a partial judgment is improper when the adjudicated claim forms the basis for several other theories of recovery against the same defendants." *Robert v. Robert Mgmt. Co., LLC*, 13-1043 (La. App. 4 Cir. 12/19/13) (*unpub*.), 2013 WL 8151042, *3 (citing *Everything on Wheels Subaru, Inc. v. Subaru South, Inc*., 616 So.2d 1234,

10

1239 (La. 1993)).[16] Thus, "[when] a plaintiff's theories of recovery arise out of the operative facts of the same transaction or occurrence and the petition states a cause of action as to any demand or theory of recovery, an exception of no cause of action should be overruled." *Simmons v. Templeton*, 99-1978, p. 5 (La. App. 4 Cir. 4/12/00), 762 So.2d 63, 66.

## PARTIES' CONTENTIONS

Ms. deVille contends that her reconventional demand states at least five causes of action, which she identifies as follows:

(i)    A declaratory judgment of sole ownership or possession of the Property under La. C.C.P. arts. 1872 and 3654;

(ii)   A declaratory judgment of co-ownership of the Property under La. C.C.P. arts. 1872 and 3654; La. R.S. 47:2121, *et seq.*; and La. Const. art. 7, § 25;

(iii)  Reimbursement of monies advanced in connection with acquisitive prescription of the Property under La. R.S. 9:5633(E);

(iv)   Recovery of the cost or current value of improvements to the Property, or the enhanced value of the Property, plus expenses by a co-owner under La. C.C. arts. 804 and 806; and

---

[16] In *Subaru*, Louisiana Supreme Court set forth the following two rules:

> If there are two or more items of damages or theories of recovery which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss one item of damages or theory of recovery. In such a case, there is truly only one cause of action, and a judgment partially maintaining the exception is generally inappropriate.

> However, if two or more actions are cumulated which could have been brought separately because they were based on the operative facts of separate and distinct transactions or occurrences, a partial judgment may be rendered to dismiss one action on an exception of no cause of action, while leaving the other actions to be tried on the merits. In such a case, there are truly several causes of action, and a judgment partially maintaining the exception as to one separate and distinct cause of action is generally appropriate.

616 So.2d at 1239.

  (v) Recovery of the cost or current value of improvements to the Property, or the enhanced value of the Property, plus costs, expenses, penalties, and interest by a tax sale purchaser and possessor in good faith under La. C.C. arts. 496 and 527 to 529; La. Const. art. 7, § 25(C); and La. R.S. 47:2290(B) and 2291(B).

In the event this court finds her reconventional demand as pled fails to state a cause of action, Ms. deVille contends that the trial court erred in failing to allow her leave to amend pursuant to La. C.C.P. art. 934.[17]

  The Waiters counter that Ms. deVille raises for the first time on appeal claims to ownership under La. C.C.P. arts. 1872 and 3654; La. R.S. 47:2121, *et seq.*; and La. Const. art. 7, § 25; and claims for recovery of the cost or current value of the improvements she made to the property, or the enhanced value of the property, plus expenses under La. C.C. arts. 804 and 806. Citing a plenitude of cases, the Waiters contend that those claims are not properly before this court and should not be considered.

  As to the claims raised in the reconventional demand, the Waiters contend that Ms. deVille sought to avail herself of the right to obtain ownership of blighted property by acquisitive prescription under La. R.S. 9:5633, but Ms. deVille admittedly failed to comply with at least one of the twelve statutory steps. Given Ms. deVille failed to comply with all the statutory steps, the Waiters contend the trial court correctly found that Ms. deVille has no cause of action under that statutory scheme. As to Ms. deVille's reimbursement and damage claims, the Waiters contend that those

---

[17] La. C.C.P. art. 934 provides, in pertinent part, that "[w]hen the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court."

claims are not against them, but their predecessors in interest—the Successions. In support, the Waiters stress that they did not own the Property either when Ms. deVille made the improvements or when she paid the taxes. Finally, the Waiters emphasize that Ms. deVille failed to file any action to quiet her Tax Title Deed (certificate) or to enforce the Statements of Lien and Privilege that she filed against the Property. The Waiters emphasize that a tax sale does not convey an ownership interest but merely a lien.

## DISCUSSION

Given this is a case in which multiple claims are asserted, the first issue we must resolve is whether, under the analysis set forth by the Supreme Court in *Subaru*, this is a case in which a partial no cause of action is appropriate. The Supreme Court in *Subaru* summarized the test as follows:

> [A] trial court, in considering an exception of no cause of action in multi-claim litigation in which the court might rule in favor of the exceptor on less than all claims or on the rights of less than all parties, must first determine whether (1) the petition asserts several demands or theories of recovery based on a single cause of action arising out of one transaction or occurrence, or (2) the petition is based on several separate and distinct causes of action arising out of separate and distinct transactions or occurrences.

616 So.2d at 1242. As discussed elsewhere in this opinion, the Supreme Court in *Subaru* held that a partial no cause of action is inappropriate when the first criteria is present—the petition asserts several demands or theories of recovery based on a single cause of action arising out of one transaction or occurrence. *Id.* at 1239. Such is the case here. *See Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. v. 2330 Palmyra St., L.L.C.*, 11-

13

0443, p. 7 (La. App. 4 Cir. 12/27/11), 80 So.3d 1234, 1240 (observing that "[t]he property owners [in an expropriation proceeding did] not expressly assert separate causes of action in their reconventional demands [but rather] set forth facts of the expropriation process, virtually from the inception of the idea for the project through expropriation").[18]

Ms. deVille's reconventional demand consists of over fifty paragraphs and asserts essentially three claims against the Waiters, all based principally on La. R.S. 9:5633. First, Ms. deVille contends that she complied with "the spirit and intent" of the statutory scheme in transforming the Property and seeks a declaratory judgment confirming that she complied with the requirements of La. R.S. 9:5633. She further requests a declaratory judgment that the Affidavit of Nullification is null. Second, in the alternative—in the event the Waiters' cash sale is valid, and they are successful in being declared the titled owners of the Property—Ms. deVille seeks reimbursement of the amounts she has advanced in association with the Property pursuant to La. R.S. 9:5633(E). Third, and finally, Ms. deVille asserts an unjust enrichment claim based on the same operative facts.[19]

---

[18] *See also TMF Hotel Properties, L.L.C. v. Crescent City Connections 501(C) 7 Gris-Gris Pleasure Aide & Soc. Club*, 18-0079, pp. 6-7 (La. App. 4 Cir. 11/28/18), ___So.3d ___, ___, 2018 WL 6204331, *4, *writ denied*, 19-0110 (La. 3/18/19); 267 So.3d 87 (observing that "[n]o one test exists for determining what constitutes the same 'transaction or occurrence'" and providing the following definitions of the term: "a group of facts so connected together as to be referred to by a single legal name; as ... a contract"; or "[a]ll logically related events entitling a person to institute legal action against another generally are regarded as comprising a 'transaction or occurrence'" ).

[19] In her prayer for relief, Ms. deVille requests the following:

    a.  Declaring [Ms.] deVille to have complied with the Statute [La. R.S. 9:5633] and confirming [her] right to possess the Property with the intent to obtain ownership;

    b.  Declaring the Affidavit of Nullification filed by Roosevelt Thompson to be a relative nullity and of no legal effect;

All of the claims asserted by Ms. deVille in her reconventional demand arise out of a single transaction or occurrence—her actions to improve the Property in an attempt to acquire ownership by acquisitive prescription pursuant to La. R.S. 9:5633. Thus, this is not a case in which granting a partial exception of no cause of action would be appropriate under the *Subaru* test. The narrow issue presented is whether Ms. deVille's reconventional demand states any cause of action.

Again, the principal focus of the claims pled in the reconventional demand is La. R.S. 9:5633. This court, in a trio of cases, has construed the statute:

- *Mouledoux v. Skipper*, 12-0212 (La. App. 4 Cir. 11/7/12), 104 So.3d 585;

- *Ferrari v. Nola Renewal Grp. LLC*, 15-1020 (La. App. 4 Cir. 6/1/16) 194 So.3d 1246; and

- *1137 N. Robertson, LLC v. Jackson*, 19-0553 (La. App. 4 Cir. 11/20/19), ___ So.3d ___, 2019 WL 6200294.

Construing the statute for the first time,[20] this court in *Mouledoux* observed that "[t]he statute is complex and requires strict compliance, as the penalty for non-compliance results in the possessor losing all of his rights under the statute, as well as reimbursement of the money invested."

---

c. In the event the Defendants-in-Reconvention are successful in their real action, rendering judgment in favor of [Ms.] deVille pursuant to La. R.S. 9:5633(E) and ordering the reimbursement of all monies as defined in that statute; and

d. Rendering judgment against the Defendants-in-Reconvention for all damages sustained by [Ms.] deVille which are reasonable in the premises and just, together with legal interest thereon from date of judicial demand until paid, and further liable for payment of compensatory damages, statutory penalties, costs, attorneys' fees, and further relief as this Court deems just and equitable.

[20] In *Mouledoux*, this court observed that there were "no reported cases interpreting this statute." 12-0212, p. 1, 104 So.3d at 586.

*Mouledoux*, 12-0212 at pp. 9-10, 104 So.3d at 590. Continuing, this court, in

*Mouledoux*, held that a neighboring landowner—the "blight remediator"—

was entitled to reimbursement of expenses from the property owner under

La. R.S. 9:5633(E), despite the blight remediator's failure to meet the 270-

day deadline to obtain a certificate of occupancy or to demolish the

improvements on the property. *See Mouledoux*, 12-0212, p. 10, 104 So.3d at

590 (observing that "[t]he first part of La. R.S. 9:5633 E(1) clearly and

unambiguously states that the possessor shall be reimbursed for a litany of

items expended").[21]

In *Ferrari*, there were two lots (pieces of property) at issue. The blight

remediator failed to satisfy all the statutory steps as to one of the two lots.

As to that one lot, this court, citing *Mouledoux*, found that the blight

remediator was entitled to reimbursement from the property owner under La.

R.S. 9:5633(E).

In the third case construing the statute, *1137 N. Robertson*, the

appellant contended that the filing of an affidavit of nullity was conclusive

evidence that the appellee's affidavit of intent to possess was defective. The

appellant further contended that if a falsified document was filed under La.

---

[21] In *Mouledoux*, the blight remediator took the statutorily required steps of providing notices to the property owner and obtained corporeal possession of the property in October 2010. Thereafter, the blight remediator began remediating the property. The property, which was located in the Lakeview area of the City, had a house on it that was flooded in Hurricane Katrina (in August 2005). In November 2010, the blight remediator successfully blocked the property owner's attempt to demolish the house. In January 2011, the City rescinded its blight adjudication of the property. In February 2011, the blight remediator, changing plans, applied to the City for a demolition permit. The City rejected the demolition permit application because the blight remediator was not the owner of the property. In March 2011, the property owner filed a possessory action and requested a temporary restraining order. The blight remediator requested reimbursement for all the amounts incurred remediating the property. This court found the blight remediator was entitled to reimbursement under La. R.S. 9:5633(E).

R.S. 9:5633(J), the appellee's sole remedy would be restricted by 9:5633(K) to a damage claim against the affiant under La. C.C. art. 2315. Finding these contentions unpersuasive, we reasoned that La. R.S. 9:5633(K) is devoid of any language prohibiting the filing of a declaratory judgment to determine whether an affidavit of nullity is valid.

Turning to the instant case, Ms. deVille's admitted failure to comply with La. R.S. 9:5633(A)(12) precludes her from obtaining ownership by acquisitive prescription under the statutory scheme. *See Mouledoux*, *supra* (observing that strict compliance with the statute is required). Given this finding, the validity of the Affidavit of Nullity is not at issue; thus, we do not address it. Nonetheless, contrary to the Waiters' contention, Ms. deVille's failure to comply with all twelve statutory steps does not forfeit her right to claim reimbursement under La. R.S. 9:5633(E). This court, in both *Mouledoux* and *Ferrari*, recognized the right of a blight remediator who failed to comply with all twelve statutory steps to seek reimbursement under La. R.S. 9:5633(E).[22] Such is the case here.

---

[22] La. R.S. 9:5633(E) provides:

> (1) In the event that the owner is successful in bringing a real action against the possessor pursuant to Code of Civil Procedure Article 3651 et seq., the owner shall reimburse the possessor for all monies advanced by the possessor for attorney fees and costs, tax statements or researches, mortgage or conveyance certificates, title abstracts, filing fees, postage, copies, printing, the payment or satisfaction of mortgages, judgments, liens, and other encumbrances, plus costs and expenses for cancellation thereof, and for all ad valorem taxes, interest, and penalties paid by the possessor on the immovable, the value of the improvements made or done on the immovable by the possessor after the date that corporeal possession was taken, and the cost or value of any repairs, rehabilitation, maintenance, removal, or demolition to the extent not otherwise included in the value of the improvements and for any other reasonable costs incurred or work done by the possessor in connection with the acquisitive prescription provided for in this Section.

Given our findings that Ms. deVille states a cause of action under La. R.S. 9:5633(E) for reimbursement against the property owners (the Waiters) and that this is a case in which a partial no cause of action is inappropriate under *Subaru*, we do not address Ms. deVille's other claims.

## DECREE

For the foregoing reasons, the appeal is converted to an application for supervisory writ; the writ is granted; the trial court's judgment sustaining the peremptory exception of no cause of action is reversed; and this matter is remanded for further proceedings.

**APPEAL CONVERTED TO WRIT; WRIT GRANTED; JUDGMENT REVERSED; AND CASE REMANDED**

---

(2) In addition to the foregoing reimbursements, all monies advanced by the possessor shall earn, and the possessor shall be entitled to receive, conventional interest at the highest rate allowed pursuant to Civil Code Article 2924(C).

(3) To prove the cost or value of repairs, rehabilitation, maintenance, removal, or demolition made or done on the immovable, the possessor shall provide written receipts for the payments of said costs from the persons who performed the work or from whom the materials were purchased or affidavits establishing the hourly rate generally charged for such work in the parish in which the immovable subject to possession pursuant to this Section is located and the number of hours spent on such work.

(4) In the event that the owner contests the validity of such documentation, appraisers shall be appointed and shall proceed in the manner set forth in R.S. 47:2223 to determine the cost or value of said repairs, rehabilitation, maintenance, removal, or demolition.